J. H. Dwight, Appellee, v. City of Des Moines, Appellant.

**ADVERSE POSSESSION:** Limitation of Actions—Ten-Year Period.
1  Open and notorious possession of real property, under claim of
title, for a period of ten years, bars an action for recovery.

**BOUNDARIES:** Acquiescence—Knowledge. The doctrine of bound-
2  ary lines by acquiescence is simply *mutual* agreement implied.

**ADVERSE POSSESSION:** Operation and Effect—Relative Strength
3  of Titles. Plaintiff in an action to recover real property on the
ground of adverse possession must recover on the strength of
his own title, not on the weakness of his adversary's.

**LIMITATION OF ACTIONS:** Recovery of Real Property—Quieting
4  Title. A cause of action for the recovery of real property accrues
on the date of the ouster.

*Appeal from Polk District Court.*—W. H. McHenry, Judge.

TUESDAY, FEBRUARY 15, 1916.

ACTION to quiet title and to restrain the defendant from claiming title to or interest in certain land. Plaintiff bases his right to the land on a claim of adverse possession for the statutory period. Judgment and decree for the plaintiff. Defendant appeals.—*Reversed.*

*H. W. Byers, Eskil C. Carlson* and *Earl M. Steer*, for appellant.

*Oscar Strauss* and *Don B. Shaw*, for appellee.

GAYNOR, J.—The plaintiff alleges:

1.   That, on March 15, 1905, he purchased and had conveyed to him by warranty deed the following described premises, situated in the city of Des Moines: The East ½ of the Northeast ¼ of the Southwest ¼ of the Southeast ¼, Section 31, Township 79 North, Range 24 West of 5th P. M., excepting the north 133 feet thereof.

2.   That thereafter, Waveland Place, an official plat of the east 100 acres of the Southeast quarter of Section 31, above

described, was platted, and the land purchased by the plaintiff became subsequently Lot 2 of said Waveland Place.

3. That since said time above specified in the year 1905, the plaintiff and his assigns and successors have been in the continuous, undisputed, notorious and adverse possession of all the above described property under color of title.

4. That, in the year 1905, the defendant city erected a fence upon the property of the plaintiff herein, 18 feet east of the west line of the above described property and the said above described Lot 2, Waveland Place, and said fence has been so erected since said time.

5. That at such time and continuously since, the plaintiff has objected to the city concerning the erection thereof and continuance of said fence as an invasion of or trespass upon his property and in contravention of his right in and to said premises, and that the said defendant has continued in the possession thereof and has received and accepted all the benefits and profits therefrom.

6. That the defendant city, on or about the year 1910, acquiesced in the plaintiff's said claim that the said fence should be on a line 18 feet west of where it is now located, and has since such time been willing to purchase the above described premises.

7. That he has been deprived of the use of said premises for more than 8 years; that the defendant has graded and removed soil from said premises and is attempting to use said premises for a road, and that plaintiff has been damaged in the sum of $300. And plaintiff prays that the title to said 18 feet be quieted in him and that an injunction issue restraining the defendant from claiming any title or interest therein; that it be required to remove the fence to the west line of plaintiff's land, and that plaintiff be given possession.

The defendant answers:

1. Denying each and every affirmative allegation of the petition.

2. Admitting the allegations contained in Paragraph

2 and disclaiming any knowledge of the facts alleged in Paragraph 1.

3. Alleging and charging the fact to be that, in the erection and maintenance of this fence upon the east line of its property, it has erected and maintained the same wholly on the true line thereof, and without any encroachment upon the property of the plaintiff or any part thereof.

During the trial, without objection, the defendant amended its answer, and alleged: That, if the plaintiff ever had any title to the land in controversy, his claim is now barred by the statute of limitations, for the reason that he has not been in possession of the premises for a period of more than 10 years prior to the beginning of his action; that the defendant city has been in the open, adverse and notorious possession of the premises under claim of title for a period of 10 years previous to the beginning of the action.

Upon the issues thus tendered, the cause was tried to the court and a decree rendered for the plaintiff, adjudging and decreeing that the defendant be forever enjoined from claiming any right, title or interest in and to the 18 feet west of the fence now erected upon Lot 2, Waveland Place, and quieting the title thereto in the plaintiff. From this action, the defendant appeals.

Upon the trial of the case, it was admitted that the plaintiff is the owner of the East $\frac{1}{2}$ of the Northeast $\frac{1}{4}$ of the Southwest $\frac{1}{4}$ of the Southeast $\frac{1}{4}$, 31-79-24, except the north 133 feet thereof, and that said description corresponded with what is now known as Lot 2, Waveland Place; that .Waveland Place was platted in 1905; that previous thereto, and for at least 25 years, a fence had been erected and was in existence on a line 18 feet west of the west line of Lot 2, Waveland Place; that, in the year 1902, the city of Des Moines platted a plat of ground now known as Glendale Cemetery, and the lot here in controversy adjoined Glendale Cemetery on the east; that the deed to Glendale Cemetery provided that the defendant city should have 60 acres of ground, and, in order

to make up the 60 acres, it was necessary for the city to move the fence, heretofore described, 18 feet to the east; that the 18 feet is now the ground that is in controversy in this action. It was further agreed that the fence was moved by the city sometime during the year 1902 or 1903, but more than 10 years previous to the beginning of this action, and the city has, ever since said time, been in possession of said premises, open and notorious, and under claim of title. It was further agreed that the old fence was not on the true survey line; that the ground conveyed to the plaintiff as Lot 2 in Waveland Place was occupied as Lot 2 by his grantors in succession for a period of 25 years prior to the purchase, up to the old fence referred to; that the city changed the fence in 1902 or 1903, and the plaintiff purchased the lot in 1905.

I. It is apparent, therefore, from this record, that the 18 feet in dispute is not a part of the premises owned by the plaintiff as Lot 2, Waveland Place. Plaintiff bases his right to it on the ground, as he alleges in his petition, that he has been in open, notorious and adverse possession of this strip of ground, continuous and undisputed, under color of title, ever since the year 1905. He stipulates, however, that, in the year 1902, the defendant purchased land lying on the west of his lot and adjoining it; that, under the deed to the defendant, it was provided that defendant should have 60 acres of ground, and, in order to make up the 60 acres, it was necessary for the city to move the fence described 18 feet, and that they did move it in 1902 or 1903, and the city has ever since that time been in possession of said premises, open and notorious and under claim of title.

It is further stipulated that, previous to the purchase by the defendant of the land west of Lot 2, a fence had been erected and was in existence on a line 18 feet west of the west lot line of Lot 2, Waveland Place, and the stipulation says thereafter that this fence, as it originally existed, was 18 feet west of the west line of plaintiff's lot and was, therefore, not on plaintiff's lot; that it could be moved 18 feet to the east

before it reached the west line of plaintiff's lot; that it was moved 18 feet to the east, and not on plaintiff's lot. This 18 feet was not, therefore, a part of Lot 2, according to government survey or the plat. The stipulation that Lot 2 was occupied by plaintiff's grantors in succession for a period of 25 years prior to his purchase up to the old fence means simply that they were occupying Lot 2 and extended their possession 18 feet beyond the west boundary of their lot to the old fence.

It does not appear by whom the old fence was erected, or that it was ever claimed by anyone to be the true line between plaintiff's land and the land purchased by the defendant, except as such inference might be drawn from the fact of the erection of the fence and occupancy. Plaintiff does not base his right upon acquiescence, but upon adverse possession. He says, however, in his stipulation, that in 1902, prior to his purchase, the defendant had assumed possession of this land in controversy, had moved the fence to the east 18 feet, to correspond with the west line of plaintiff's lot, and that since that time, the city (not the plaintiff) has been in possession of the same, open and notorious and under claim of title.

This is the stipulation of the parties. This we must assume to be the fact. Some evidence has been introduced, however, showing, so far as it is competent, that plaintiff had some conversations with the mayor and members of the city council individually, touching the occupancy of this land by the defendant. He says he knew, at the time he purchased it in 1905, that the defendant was in possession, making some claim to the land.

Some evidence was introduced showing conversations had with the mayor and with the park commissioner and with the city solicitor. This was admitted by the court on the theory, as said by the court, that it tended to show that plaintiff was not acquiescing in the new line, and it was the thought of the court that this evidence was competent for that purpose, but the defendant was not relying upon

1. ADVERSE POSSESSION: limitation of actions: ten-year period.

acquiescence. The burden was on the plaintiff to make his case on the theory alleged by him. On this theory, he stipulated himself out of court.

It seems like a contradiction to hold that the plaintiff can recover on the theory that he has been in continuous, undisputed, notorious and adverse possession of the property in controversy under color of title, in the face of the stipulation that the defendant has been in the open and notorious possession of the premises, under claim of title, for more than 10 years prior to the beginning of the action.

There is no evidence, even on the question of acquiescence, as to how the fence came to be where it originally was, or that any of the owners believed it to be on the true line, or acquiesced in its location. It is simply stated that there was a fence 18 feet west of the west line of plaintiff's land for 25 years prior to 1903. What the purpose was in putting it there, or what purpose it served, the evidence does not disclose. There is at least no evidence that it was there and acquiesced in as indicating the true line between the parties. The plaintiff got all the land that his deed called for, though perhaps not all the land that he thought he was getting. He said that his grantor showed him the old post holes, the holes where the old fence stood, and told him that his land extended back there. He says, however, that the new fence was then erected, and he knew that the defendant was claiming the land west of the new fence.

2. BOUNDARIES: acquiescence: knowledge.

Acquiescence involves more than the building of a fence at a certain point and then, after building, acquiescing in it as the true line. One cannot acquiesce in a line created by himself and bind another party to such acquiescence, even though he acts in good faith, and believes it to be the boundary line. Acquiescence must be by both parties to make it a line by acquiescence. Acquiescence is consent inferred from silence—a tacit encouragement. This involves notice or knowledge of the claim of the other party. Acquiescence is where

a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that, under the circumstances of the case, the other party may fairly infer that he has waived or abandoned his right.

Clearly, under the record in this case, neither the plaintiff nor his grantors had any right originally to this 18 feet. Their only claim of right rests on adverse possession or on acquiescence. Who placed the fence there? Why was it placed there? Who acquiesced in it? Who had knowledge of it? Who remained silent with knowledge? So far as this record shows, this fence was placed there by plaintiff's grantors, with knowledge that it was not on the true line. Did the other parties acquiesce? Did they have knowledge and remain silent? Did they do any act indicating an acquiescence in the trespass by plaintiff's grantors? There is nothing in the record to answer.

In *Lowndes v. Wicks*, 69 Conn. 15 (36 Atl. 1072, 1079), we find the following definition of acquiescence, and it clearly expresses our thought:

"Acquiescence has been well defined as quiescence under such circumstances that assent may be reasonably inferred from it. . . . Assent thus given is as irrevocable as if expressly stated in words. . . . Assent is a necessary inference from acquiescence, and estoppel was the necessary consequence of assent."

Therefore, it is apparent that, to make acquiescence, it must appear that the parties on the other side of the line acquiesced in the line as made. It involves the idea that the other party knew of the line as established and the possession taken and assented thereto, and this may be shown by his conduct, by his words, or by his silence. There must, however, be something in the record to show that the party charged with acquiescence consented to the act of the other in establishing the line and assuming possession. This involves knowledge or notice of the condition. No one can be said to

have acquiesced in a line until it is shown first that he had notice or knowledge of the claimed line.

In *Miller v. Mills County*, 111 Iowa 654, 660, we find the following language:

"The great current of authority sustains our conclusion that, in the absence of other controlling circumstances, the inference is conclusive that the division line between adjoining tracts, definitely marked by the erection and maintenance of a fence or other monuments, recognized by the owners as such, and up to which they have occupied and cultivated the land on either side more than 10 years—the statutory period of limitation—is the true boundary between them."

*Klinkner v. Schmidt*, 114 Iowa 695, 699:

"We apprehend the distinction between the doctrine of the cases which deny efficacy to an occupancy founded on mistake, and those which recognize occupancy to a line established by acquiescence to be this: that in the one case, the assertion of title is presumed to be limited to the premises covered by the grant under which possession is claimed; while in the other case, there is a wholly independent basis for the assertion of title, to wit, acquiescence of the adjoining owner. . . . This acquiescence is not to be presumed from the mere fact of notorious possession by the adverse claimant to a line which he himself has established. It must be shown by proof of an express agreement, or of facts from which an agreement may be implied. When shown, it may be considered as an admission of title, or as an agreement in settlement of the controversy between the parties, or as the basis of an estoppel, or, as in this case, the foundation of a claim of right, which, if followed by possession for 10 years, will ripen into title."

See also *Palmer v. Osborne*, 115 Iowa 714.

It is true that it is said in *Keller v. Harrison*, 139 Iowa 383: "An agreement to a boundary is to be inferred from long acquiescence"; but it must be shown that both parties

acquiesced in the line. To acquiesce, knowledge or notice must be shown.

The plaintiff, however, did not base his action upon acquiescence, although he bases his right now in argument upon what he claims to be acquiescence, but the argument is not supported by the record. There is no proof from which acquiescence, on the part of either the defendant or the defendant's grantors, can rest. The defendant, immediately upon his purchase in 1902 or 1903, repudiated the line, moved the fence and took possession of this strip of ground; this, more than 10 years before this action was commenced. This plaintiff could not acquiesce, for the reason that he did not then own the land, and there is no proof that his grantors did.

Plaintiff, in the 4th paragraph of his petition states the basis of his claim of right to the possession of this land, to wit, that he and his successors have been in the continuous, undisputed, notorious and adverse possession of all the property in controversy under color of title since 1905. He stipulates, however, that the defendant moved the fence to where it now stands in 1902 or 1903, more than 10 years previous to the beginning of this action, and that the city has been ever since in the possession of said premises, open and notorious and under claim of title. The stipulation negatives the very basis of his claim. The question is not whether defendant has acquired title by adverse possession, but whether the plaintiff has proved his right to possession under the claim of adverse possession. Plaintiff must recover upon the strength of his own title. But conceding, for the sake of argument, that plaintiff's ancestors had acquired a right to this 18 feet of land under their possession up to the time that the defendant purchased it, in 1902 or 1903, the defendant took possession of this land, claiming the right to it under its deed as a part of the premises purchased by it. It has been in the open and notorious possession of it ever since, according to the stipulation, and this with the knowl-

3. ADVERSE POSSESSION: operation and effect: relative strength of titles.

edge of the plaintiff. It is true that the record discloses that the plaintiff was dissatisfied with the act of the city; that he complained of it to its officers; that he placed the matter before the officers, and some action was taken by these officers touching the controversy; but nowhere does he show in the record that the defendant surrendered any right or claim to the land it acquired under its possession.

II.   If any cause of action accrued in favor of this plaintiff or his grantors, based on the act of the defendant in taking possession of this land, that cause of action accrued immediately upon the defendant's entering upon the land and dispossessing plaintiff's grantors. Assuming that the plaintiff succeeded to the rights of his grantors, the action should have been brought within 10 years from the dispossession. Code Supplement, 1913, Section 3447, Subdivision 7. This statute applies as well to actions in equity as to actions in law. It is in the nature of an action to recover the possession of real property within the meaning of the statute. See *Relf v. Eberly*, 23 Iowa 467; *Williams v. Allison*, 33 Iowa 278; *Sioux City & St. P. R. Co. v. O'Brien County*, 118 Iowa 582; *Wright v. Le Claire*, 3 Iowa 221; *Phares v. Walters*, 6 Iowa 106; *Stanley v. Morse*, 26 Iowa 454.

4. LIMITATION OF ACTIONS: recovery of real property: quieting title.

That a cause of action accrues and the period of limitation begins to run from the date of the ouster, see *Robinson v. Lake*, 14 Iowa 421; *Tibbetts v. Morris*, 42 Iowa 120; *Sorenson v. Davis*, 83 Iowa 405.

The plaintiff's cause of action, if any he had, is barred by the statute of limitations. It is not necessary, however, that we resort to the statute of limitations, for the reason that the plaintiff has failed to show by competent evidence a right to the land in controversy, under the claim made by him.

For the reasons hereinbefore set out, the case is— *Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.