HOWARD C. MORLEY et al., Appellees, v. MARK J. MURPHY et al., Appellants.

**BOUNDARIES:**   Acquiescence—Conflicting   Governmental   Lines.
1  Governmental lines become quite immaterial when the adjoining parties have fixed a different line and both have acquiesced therein for 10 years or more, even though one of the parties thereby secured more land than his deed calls for.   Section 4228, Code, 1897.

**BOUNDARIES:**   Presumptions — Governmental   Lines.   Principle
2  recognized that, in a controversy between adjoining landowners as to the true boundary, the court, nothing further appearing, will presume that the governmental lines constitute such true boundary.

**ADVERSE POSSESSION:** Hostile Character of Possession—Mistake—
3  Effect.   Principle recognized that possession is not adverse when the one in possession *intends to occupy to the true line only*, but by mistake occupies beyond such true line.

*Appeal from Monona District Court.—*GEORGE JEPSON,
Judge.

WEDNESDAY, APRIL 4, 1917.

THIS case involves a controversy over a division line.
Plaintiff claims the line by acquiescence. Decree for the
plaintiff. Defendants appeal.—*Affirmed.*

*Prichard & Prichard* and *D. M. Harper,* for appellants.

*Chas. E. Underhill,* for appellees.

1. BOUNDARIES:
acquiescence:
conflicting gov-
ernmental
lines.

GAYNOR, C. J.—Plaintiff claims to be
the owner of the east ⅜ and the defend-
ant claims to be the owner of the west ⅝
of the NE¼ of the SW¼ of Section 30,
Township 84, Range 45, Monona County,
Iowa. The controversy here involves the dividing line north
and south between these two fractional parts of this forty.
Hereafter, for convenience, we will call plaintiff's land the
east 15 acres, and the defendant's land, the west 25 acres.

Plaintiff's father, and grantor, obtained title to this
east 15 acres from C. A. McWilliams, in the fall of 1896,
and moved on in the spring of 1897, and he and his grantees
have been in possession ever since. One Joseph P. Smith
was the owner of the west 25 acres, and in 1896, sold it to
defendant's grantor, Mary Murphy. Smith had owned and
occupied this land for 18 years prior to the sale to Mary
Murphy, and the defendant and his grantors, ever since.
There is no controversy between these parties as to the own-
ership of the fractional parts hereinbefore described. The
only question now between them is as to the dividing line
that separates these tracts. To divide them, there must be
a line of demarcation. The line in dispute is shown in the
following plat:

MAP
Showing true location of division line between respective interests as compared with fence lines.

In this plat, the west line is the fence line, and is the one claimed by the plaintiff. The east line is where the line should be to give to each one the quantum of land called for by his deed. The plaintiff brings this action, and claims that the west line appearing upon the plat is the one that should be recognized as the dividing line, for the reason that, on this line, a fence was built more than 30 years ago, and that the fence was recognized and acquiesced in by both parties as the line dividing these two fractional parts of this forty. The plaintiff does not bottom his case on adverse possession, and apparently admits that, if the line is established at the fence, he gets more than 15 acres, and the defendant less than 25 acres. To separate or segregate

any portion of land upon the surface of the earth from other lands requires a line of some sort to mark the point of separation. This is the purpose in establishing government corners and lines. Any portion of land may be separated by metes and bounds designated and pointed out. It may be separated by lines established and acquiesced in by adjoining owners for the statutory period. Within the lines so established the segregated land must be found. Defendant's land is between the east and west and north and south lines of his property. The plaintiff's land is also between the north and south, east and west lines of his property. It comes to us to settle the location of the east line of defendant's property and the west line of plaintiff's property, the line common to both. This line being found, it becomes the dividing line between the property. The defendant can claim only within his lines to this line on the east, and the plaintiff, only within his lines to this line on the west.

Our statute, Section 4228 of the Code of 1897, provides that, when one or more owners of land, the corners and boundaries of which are in dispute, desire to have the same established, they may bring an action in the district court of the county where such disputed corners or boundaries, or part thereof, are situated, against the owners of the other tracts which may be affected. In such proceeding, either party may, by proper plea, put in issue the fact that certain boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of 10 consecutive years.

Code Section 4233 provides that, if that issue is presented, the commissioners shall take testimony as to whether the boundaries and corners alleged to have been recognized and acquiesced in for 10 years or more have in fact been recognized and acquiesced in, and Code Section 4236 says:

"If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years

have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established.

It is apparent that this statute touching corners and boundaries acquiesced in, deals with a situation that may arise, in which, by reason of acquiescence, one party or the other may be given more or less than he would be entitled to under a strict recognition of the original boundary lines as established by the government.

It may be conceded that the government

2. BOUNDARIES: presumptions: governmental lines.

survey originally fixed corners and lines and boundaries by which the government divisions so created were recognized and known, and it may be conceded that one who buys according to government survey is entitled to all the land within the limits of the boundaries fixed by the government, whether this be more or less, in fact, than a strict measurement according to government subdivisions would give. Thus, if one buys the northwest quarter of a section, he is entitled to the possession of all the land within the boundaries of the original survey, as fixed by the government, whether it contains more or less than 160 acres. So it is with each of the government subdivisions. This would be his right under a deed describing land according to government survey.

It is apparent, however, that, under this statute, the right to claim the land within the limits of the government survey is invested in the purchaser. This right he may surrender or lose by his own conduct. If he acquiesces, for the statutory period, in a line dividing his land from others, different from the line of the government, he thereby creates for himself and against himself a line other and different from that which the government created, and he is bound by it, even though it in fact gives him less land than he would be entitled to if he had insisted upon his right to hold to the line fixed by the government. The statute so provides. Boundaries of land were originally fixed by the

government survey. It is presumed that people bought according to the government survey. It is according to the government survey that the land originally passed from the government. The purchaser has the right to the lines and boundaries fixed by the government, if he so insists. It is also true that adjoining owners have a right to fix their lines and boundaries for themselves, and, when so fixed and acquiesced in for the statutory period, they become their lines and boundaries, without regard to where the lines and boundaries were originally placed by the government. If a controversy should afterwards arise between the parties touching the true line, of course the government line would, in the first place, control, nothing further appearing. But if the court finds that the parties have settled for themselves the lines and corners, and have acquiesced in them for the statutory period, the court leaves them where it finds them, and leaves the line at the point so shown to have been established by acquiescence. We say this much to show the policy of the state as expressed in its legislative enactments.

3. ADVERSE POSSESSION: hostile character of possession: mistake: effect.
There is no government line involved in the suit in question, as can be plainly seen from the character of the subdivision of this forty. In the conveyances made, the forty has been described according to the government description. The plaintiff bought the east ⅜ the defendant, the west ⅝. The court, being called upon to divide this land, would follow an accurate survey of the land, nothing further appearing, by which each party would be given the fractional part owned by him, and a line between them established accordingly. But here it is claimed that the parties themselves have fixed the line that divides these fractions; that they have fixed it by acquiescence for such a length of time that each party, as against the other, is now estopped to claim the line to be at a place other and

different from where it has existed for the statutory period of time. We are not concerned as to how this line was established, whether by mistake as to where the true line is, or where the true line should be, or as to whether it was done designedly by the plaintiff's grantors. Of course, under the rule in *Grube v. Wells,* 34 Iowa 148, and kindred cases, it is clear that, if the plaintiff had taken possession of this 15 acres, intending only to claim up to the true dividing line between his land and the land on the west, and had by mistake taken possession beyond the true line, intending only to hold to the true line, his possession would not be adverse, for the reason that, to make it adverse, his claim of right must be as broad as his possession. Where one takes possession of land, intending only to claim to the true line, but, by mistake as to where the true line is, occupies beyond the true line, his possession does not become adverse, for the reason that he is not claiming a right to possess beyond the true line. We have no occasion, however, to deal with the law of adverse possession in this case. The plaintiff has not invoked it to sustain his right. The district court found that the fence had been built and maintained and acquiesced in as the line dividing these two fractional parts of this forty for more than the statutory period; that it had been acquiesced in by the owners on either side of the fence; and that, under the rule of acquiescence, it became and is the true boundary line between these parties. As we have frequently said, one cannot acquiesce in a line created by himself and bind another party to such acquiescence, even though he act in good faith and believe it to be the true line. Acquiescence must be by both parties, to make a line by acquiescence. This involves notice or knowledge of the claim of the other party. It is apparent, therefore, that, to make a line by acquiescence, it must appear that the party on the other side of the line acquiesced in the line as made. It involves the idea that

the other party knew of the line as established, knew of the possession taken, and assented thereto. This may be shown by his conduct, by his words or by his silence.

We have examined the evidence submitted in this record, in which the court found that the line alleged to be in dispute had been recognized and acquiesced in by the parties for more than the statutory period. We find that the judgment of the court, based upon the evidence, has ample support. The evidence establishes the following facts:

That Louis A. Morley bought the east three eighths in 1896, bought it from C. A. McWilliams, and moved on the land in March, 1897; that he and his grantees have been in possession ever since; that, when Morley moved on the land, a division fence was there, such as is shown on the plat hereinbefore set out; that, at this time, Joseph Smith and Mrs. Smith owned and occupied the land to the west; that the fence had been on there for some years before Morley took possession; that on neither side had any question been raised as to its being on the true line; that both parties farmed and cultivated up to the fence on either side; that the fence remained there as the dividing line until the spring of 1915, when the defendant undertook for the first time to remove it; that Smith continued to own the west 25 acres until he sold it to Murphy in 1906; that on the north end of this fence the land on either side was cultivated up to the fence. The land along the south end of the fence was in pasture. Smith had it fenced in and used the southern part as a pasture, using the fence in controversy as his east fence. The south half of the 15 acres was also fenced in, using the fence in question as the west fence of the pasture. North of this, both on the 15 acres and the 25 acres, the land was cultivated up to the fence. The fence has been in the same location, as is shown upon this plat, even since 1896. This is shown by the positive testimony of living witnesses, and not disputed. There is a strong

suggestion in the evidence that it had been there for several years before 1896.

In *Miller v. Mills County*, 111 Iowa 654, at 659, Judge Ladd, speaking for the court, said:

"Reference is had to the government survey as pointing out the lines by which the lands described in the patents passed from the government, and by which they are ordinarily transferred by deeds. But if the coterminous owners have adopted another line as their division line, and have occupied up to it and recognized it as such for a period of 10 years, there appears to be. no reason for not regarding it as the true boundary line, notwithstanding it is not that fixed by the government survey," citing authority.

"There was no express agreement between the parties to this case, or their grantors, that the fence be regarded as marking the boundary between their respective tracts of land, but the circumstances are such that an agreement ought to be implied. For more than 18 years they have occupied up to and acquiesced in the division fence, and maintained it as the true boundary line between them. They adopted it by their unmistakable acts, which, in any other transaction, would have all the force of implied contracts.  *  *  *  The authorities quite generally hold that, in the absence of controlling circumstances, acquiescence in a division line, assumed or established, accompanied by actual occupancy by the adjoining owners in accordance therewith for a period equal to that prescribed in the statute of limitations within which an entry may be barred, is conclusive evidence of such an agreement. The rule will be found perspicuously stated in *Sneed v. Osborn*, 25 Calif. 626. 'The acts of the parties might not amount to an agreement between them to locate the tract as surveyed, and it is unnecessary to consider them in that view; but do they not show an acquiescence by the parties in those lines between the two tracts of land? If they do show such acquies-

cence, it will make no difference in the result that they acted in ignorance or under a mistake as to the true line. * * * Authorities are abundant to the point that when owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line.'"

The opinion then proceeds:

"The great current of authority sustains our conclusion that, in the absence of other controlling circumstances, the inference is conclusive that the division line between adjoining tracts, definitely marked by the erection and maintenance of a fence or other monuments, recognized by the owners as such, and up to which they have occupied and cultivated the land on either side more than ten years, * * * is the true boundary between them."

This *Miller* case has been cited with approval and followed ever since, and controls the rights of the parties here. See *Laughlin v. Francis,* 129 Iowa 62; *Klinkner v. Schmidt,* 114 Iowa 695, 699; *Griffin v. Brown,* 167 Iowa 599; *Dwight v. City of Des Moines,* 174 Iowa 178; *McGovern v. Heery,* 159 Iowa 507.

On the whole record, we think the judgment of the court was right, and it is—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.