MARIE G. LONGSHORE, Appellant, v. LUELLA COPELAND et al., Appellees.

**BOUNDARIES:** Acquiescence—Controlling Force of Government Monuments. Government monuments take precedence over meager and uncertain testimony bearing on acquiescence in a different boundary line.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

NOVEMBER 26, 1917.

·PROCEEDING to establish a boundary line between two quarter-section farms. The plaintiff claimed a line by acquiescence. By cross-bill the defendant claimed a true line, and claimed that the same had been mutually recognized as such by the respective owners of the farms. There was a decree for the defendant.—*Affirmed.*

*Hunn & Jones,* for appellant.

*C. G. Lee, I. R. Meltzer, C. W. Garfield* and *J. A. Hull,* for appellees.

EVANS, J.—The plaintiff is the owner of the northeast quarter of a certain Section 14. The defendant is the owner of the northwest quarter of the same section. The line in controversy, therefore, extends north and south between these two quarter sections. The plaintiff's land was formerly owned by Miller, who acquired it from the government, and who lived on it until he died, in 1883. The defendants' land was owned by Waterman, who also acquired

his land from the government, and who lived upon it until he died, some 7 or 8 years previous to this suit. The plaintiff acquired her land in the year 1911, and the defendants acquired theirs in 1910. Between the two farms, a cheap wire fence had been maintained for 30 or 40 years at least. Running parallel therewith was formerly a locust hedge, a remnant of which still remains, and the course of which is readily ascertainable. The fence and the hedge are from 3 to 10 feet apart, varying a little in distance at different places. The plaintiff claims that the line of the fence has always been acquiesced in as the dividing line. The defendant claims that the hedge has always been recognized as the true line. Miller set out the hedge. He did not set it out for the full length of the line, because of wet ground. Some time later, Waterman built the fence. The fence has always been maintained up to the time of the beginning of this controversy, one half thereof being maintained by the plaintiff and her grantors, and the other half by the defendant and her grantors. The theory of the plaintiff is that Miller set out the hedge for the purpose of raising posts, and that he set the same inside the line fence and upon his own land. This theory has some corroboration in the fact that he set trees in such manner parallel with his north, east and south lines. It has further corroboration in the fact that it is very doubtful whether the hedge in question was ever used as a fence at any part thereof, although it is claimed by the defendant that there is some evidence to that effect. It is clear, however, that for more than 30 years it has never been used for such purpose; and it is claimed, also, that but a very small part thereof remains upon the ground at the present time. It appears, also, that, for a considerable distance, an open ditch runs between the fence and the hedge, so that the disputed strip had in fact little practical value to either party.

The general theory of the defendant is that the hedge

was intended to mark the true line; that Waterman, de-
siring to use his land as a pasture, built the wire fence
close to the hedge because the hedge was too small at that
time to be used for fencing purposes.   The value of the
intervening strip being at that time insignificant, little at-
tention or concern was awakened by the existence of the
parallel lines.   The line of the hedge was a straight line.
The line of the wire fence was not.   It swerved more or less
in its direction, and this accounts for the difference in the
width of the intervening strip at different places.   The
plaintiff has not been able to show by any direct evidence the
fact of acquiescence between Miller and Waterman, other
than the actual maintenance of the fence by both of them.
There appear in the record some very significant circum-
stances which favor the contention of the defendant.   One
Burkhart owned the south half of the section.   His son
was a witness for the defendant.   He testified that, imme-
diately before the hedge was set out by Miller, his father
and Waterman and Miller made a survey in order to locate
the center line; that the same was located where the hedge
was later planted; that, in pursuance of the same agree-
ment, his father planted a willow hedge, extending the
same south across his half section in direct line with such
locust hedge of Miller's.   Such willow hedge is in exist-
ence at the present time.   It appears, also, in evidence that
the government quarter corner at the northwest corner of
plaintiff's farm was found shortly before the trial.   This
same quarter corner had been found by Miller and Water-
man and Burkhart at the time of their survey.   It is found
to be in direct line with the locust hedge and the willow
hedge.   The plaintiff's immediate grantor was Giles.   He
was a witness in behalf of the defendant, and testified to
the effect that he had always recognized the hedge as the
true line.   Giles was grantee of the Millers.   One son and
heir of Miller, the original owner, testified on behalf of the

defendant to the effect that his father always recognized the hedge as the true line, and to the effect that the Miller heirs did likewise. After the plaintiff acquired her farm, she first built a new fence on her half of the partition line. Because of the irregularity of the line of the old fence, she departed therefrom to some extent and set her fence in a direct line, and thereby yielded some ground to the defendant. This is a circumstance entitled to some consideration as tending to show a want of recognition of the line fence as fixing the true line between the parties.

We are quite convinced from the record that Miller believed that he was setting his hedge upon the true line, at the time of the planting thereof. The evidence of real acquiescence since, however, is very meager and uncertain, because of the subsequent setting and maintaining of the wire fence for so many years. An examination of all the evidence satisfies us, also, that the hedge line is the true government line. This was doubtless the controlling reason with the trial court in entering decree for the defendant. It is true, as claimed by the appellant, that the line of the wire fence would divide the half section practically equally between the two parties, whereas the line of the hedge gives to the defendant an advantage of about 19 feet. This discrepancy, however, is shown to be consistent with the measurements of the government survey. In any event, the discrepancy would not be controlling if the government monuments have been ascertained, as they appear to be in this case. The case involves no disputed legal propositions. We find the facts in accord with the finding of the trial court, and its decree is therefore—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.