FRANK CHANDLER, Appellant, v. THOMAS J. HOPSON, Appellee.

BOUNDARIES: Acquiescence—Crooked Line. Principle recognized that long acquiescence in a boundary line, though not a straight line, may preclude inquiry as to the true government line.

*Appeal from Scott District Court.*—WILLIAM THEOPHILUS, Judge.

DECEMBER 15, 1919.

REHEARING DENIED FEBRUARY 16, 1920.

THIS case is a special proceeding, brought by plaintiff under Chapter 5, Title XXI, of the Code, to establish the boundary line between the lands of the parties hereto, and for judgment against defendant for damages on account of trespass. The case was tried to the court as in equity. The court found the issues on boundary in favor of defendant, gave plaintiff judgment against defendant for the value of a walnut tree, and rendered judgment against plaintiff for costs, and made it a lien on plaintiff's land, which is his homestead. The plaintiff appeals.—*Affirmed.*

*Carroll Bros.* and *Helmick & Boudinot,* for appellant.

*J. A. Hanley,* for appellee.

PRESTON, J.—1. A number of cases are cited by both parties. We think there is but little dispute as to the law. Being a question of fact, wherein we do not usually set out the evidence at any considerable length, perhaps as good a way as any is to set out the claims of each of the parties, as given by them in their briefs, without restating, in so far as they are alike. The statements are short. Appellant states:

Plaintiff is the owner of about 8 acres of land in Section 26, the north boundary line of which land coincides with the north boundary line of said section. Defendant owns a large tract of land in Section 23, bordering plaintiff's said land on the north. Old fences of many years' standing separated these tracts. Defendant claims that originally it was a board fence throughout its entire length. But a barbed wire at the west end and a hedge at the east replaced

it, some 35 years ago, and have continued till the present. Defendant never had a survey made, to locate his line. He planted the hedge fence about 45 years ago. He thought he was planting it on the line of his property, and he still thinks the hedge is on the section line. The wire fence west of the hedge fence has been in its present position for some 30 years. The surface of the ground at each end of the boundary line is nearly level, and the middle sector declines sharply from the west. The hedge fence, starting from the east end of the line, follows the section line on the level land for about 150 feet, then gradually veers to the south, and at the end, near the middle of the boundary line, it is 4 feet south of the section line; and the said barbed wire fence, commencing at the west end of the line, follows the section line also, about 150 feet, then digresses to the south, being attached to convenient trees, till it joins said hedge fence. The hedge fence has become useless, from age and decay. Defendant abandoned it, and built a hog-tight fence north of it from the east, following the section line at first, then angling north of the section line, till, at its west end, it was 4 feet north of the section line and 8 feet north of his old hedge line. Defendant's land, along the east half of their boundary line, was under cultivation. Along the west half of said line, it was a timber pasture. Adjoining defendant's pasture at the west end was plaintiff's pasture. From plaintiff's pasture, a lane along the boundary line led to plaintiff's barn; thence to the highway. These old fence lines were never recognized by plaintiff or his grantors; and there had always been a dispute about the true line. Defendant built a new wire fence along the line of his old hedge fence. In removing the old hedge, he piled the brush and refuse on plaintiff's land, and burned it there. He cut and carried away a valuable walnut tree.

Appellee says that he denies the section line as the true boundary line, and contends that the true boundary line is

marked by a fence between the premises of appellant and appellee, which fence has been where it now stands for a period of 70 years. The title to the property of appellee was originally in his father, but, for the last 45 or 50 years, has been owned by appellee, who inherited the premises from his father. The original fence between the tracts of ground in dispute was built about 72 years ago, and was located exactly where the present fence is now located. That is to say, in the last 70 years, the partition fence between the premises in dispute has been on identically the same line, and the present fence is identical in location with the original fence, built 70 years ago. The original fence was built throughout its entire length of boards and posts with one wire on top. Appellee further alleges that, about 45 years ago, he planted a hedge fence, about four inches north of the original board fence, and on his own land, said hedge fence connecting with the original board fence on the east end thereof; that prior to the building of said hedge fence, there never had been a dispute or any contention between the respective owners of the premises as to the partition or boundary fence; and that, since the building of said hedge fence, and up to September, 1915, there had never been any dispute or contention between appellee and any of the various owners of the property south of his land; that appellee was born on the premises now owned by him, and never lived anywhere else, and is still living on said premises; that, in the spring of 1915, appellant and appellee had a discussion about the partition fence, the appellant claiming that the fence should be located on the section line, and set off the east half of the fence to be taken care of by appellee, and the west half by appellant; that, at about this time, appellee cut out the old hedge fence, and erected the partition fence substantially on the line of the old hedge fence, though, in one place, a few inches to the north of the old hedge fence, and on his own premises; that the new fence

thus built by appellee connected with the west part of the original fence, built 70 years before, on the east end thereof; that appellant refused to build his portion of the fence, to wit, the west part thereof, and continued to refuse to build his portion of said fence until after the decision of the court in this case.

It is also true that there never was any fence on the section line between the premises of appellee and appellant, and that the location of the original fence has never been changed, and stands today where it has stood for the last 72 years or more. It is further alleged that, a short time before appellee built his part of the fence, appellant had erected a gate at the extreme east end of his premises, and that, in building said gate, which swings on two posts, appellant planted the north post about one and one-half foot to the north of the east end of the old original fence, and that, because thereof, the appellee, in building his fence in the year 1915, and to avoid trouble with appellant, located the east end of his new fence about one foot north of the east end of the original fence, and on the ground of appellee; that, except as to this change, made necessary by appellant, there is absolutely no change between the location of the present fence and the original fence built more than 70 years ago; that, until about September, 1915, the fence, in its present location, was recognized and acquiesced in as the true boundary line, and this continued for a period of about 70 years, during all of which period appellee exercised full rights of ownership of the land on the north up to said fence, and pastured and cultivated said land up to the fence; that the grantors of appellant, during said period of time, also cultivated the 8-acre tract up to the fence line, and never questioned the fence as the true boundary line between the two tracts of ground.

A commissioner was appointed, and additional testimony taken by the court. During the pendency of the case,

Elsie Chandler intervened, alleging that she and plaintiff were joint owners and tenants in common of the property described in the petition. By the decree the court found that plaintiff and intervener are the owners of the property described in the petition, and further found and determined that:

"There was never, at any time, a division or partition fence erected, built, or constructed on the section line between Sections 23 and 26; that, many years ago, to wit, at least 40 or 50 years ago, a partition, boundary, or division fence was built and erected between the lands described in the petition of the plaintiff, and that said fence was built south of said section line, between Sections 23 and 26; that, ever since the building of said fence, the respective owners of the land north and south of said fence occupied and used their respective lands up to said fence, and that the various owners of said land north and south of said fence recognized said fence as the boundary line between the premises, and acquiesced in said fence as the true boundary line between the property separated thereby; that, during said period of 40 or 50 years, none of the owners of the land north and south of said fence ever recognized the section line between Sections 23 and 26 as the boundary or division line between the land north and south thereof. The court further finds that said fence running east and west at a point south of the section line between Sections 23 and 26, was a well-defined and established fence, comparatively straight in an easterly and westerly line, and that said fence has continued all of said period of time, and has always been recognized as the boundary line, until the plaintiff and the intervener herein became the owners of said property, in the year 1914, when, for the first time, as shown by the evidence, objection was made to the said fence as the true boundary line between the properties described in the petition of plaintiff."

·The fence erected by defendant was decreed to·be the

correct and lawful boundary line, and the court's decree so established it. We deem it unnecessary to set out further details of the decree. From appellant's own statement, it appears to be conceded that defendant's present fence is in the same place where prior fences were maintained for from 30 to 45 years; but the claim is that these fences were not recognized or acquiesced in as the true boundary line by plaintiff or his grantors. Plaintiff testifies that he never did. Plaintiff's witness Kasso says he owned plaintiff's property, and lived on it for eight years, and sold it eight years ago, at which time the fence in its present location was there, and was the boundary line between the two properties during the eight years he owned it. He never claimed anything north of the old fence, and defendant never claimed anything south; never had any trouble or dispute about its being a crooked line; he thought the fence was the line. C. W. Pinneo, produced by appellant, says:

"Well, I guess the hedge was pretty nearly straight. You see, where the fence is here, and where they went down hill, it is pretty steep—they seemed to start off with the fence, up above there pretty straight, and when they got down toward the hill, they had nothing to guide them, and they varied from the line. It must have been where they originally made it. The fence has been there a great many years. The hedge end of the fence has never been changed. I have known the location of the place since about 1880. I have been on Mr. Hopson's place many times. I have seen this fence, driving along the road. It ran east and west, of course. I saw the hedge fence first in 1881. It ran westerly from there."

Plaintiff did not deny that the present fence was the recognized boundary line for many years before he became the owner. The appellee testified that he was 70 years old, and had lived all of his life on the premises now occupied by him. Testifies to a partition fence between the Chandler

premises and his own during all this period of time. Says the original fence was built of boards and posts, and that, 45 years ago, he built the hedge fence close up to the board fence on the north side; that, during all of said period of time, no one has ever disputed the boundary line until about the year 1915, when appellant first disputed it; that, during all of that period of time, he occupied his own premises up to the fence line, and farmed the ground up to the fence; and that the different owners of the land on the south of the fence occupied that land up to the same fence line; and that there never was a word or dispute between him and the owners of the tract of ground on the south, now owned by appellant; that—

"There never was any other boundary line, during my recollection, claimed or admitted by me or any of the other former owners of the property on the south. The west end was not built by someone else; I built it clear through. That fence line has never been disputed as being the correct line by any of the owners prior to Mr. Chandler, and it has been there for 70 years, I guess, or better."

There is other evidence, and from all of it we are content with the findings of the trial court. Appellant cites cases on the following propositions: The claim of adverse possession cannot be based on disputed fence lines, or lines for mutual accommodation, or on lines placed on another's land by mistake. A mere tentative line, when the true line is not known, will not support the claim of acquiescence. A party cannot acquiesce in a line constructed by himself, and bind the other party thereby. Fences not in a straight line, and those difficult to follow, will not support a claim of acquiescence. Government corners take precedence over meager and uncertain testimony. We think the case is ruled by *Miller v. Mills County,* 111 Iowa 654; *Morley v. Murphy,* 179 Iowa 853; *Stevenson v. Robuck,* 179 Iowa 461; *Tice v. Shangle,* 182 Iowa 601; *Dake v. Ward,* 168 Iowa 118; *Dwight v.*

*City of Des Moines,* 174 Iowa 178. The claim by appellant that the decree is indefinite is without merit.

2. It is thought by appellant that the court erred in making the judgment for costs a lien on plaintiff's land involved herein, because it is his homestead.

Code Section 4238 provides:

"The costs in the proceeding shall be taxed as the court shall think just, and shall be a lien on the land or interest therein owned by the party or parties against whom they are taxed, so far as such land is involved in the proceeding."

Code Section 2972 reads:

"The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary."

This section was enacted prior to Section 4238. It will be noted that, by Section 2972, the homestead is exempt from judicial sale only "when there is no special declaration of statute to the contrary." Section 4238 expressly makes any judgment for costs a lien upon the land involved in the proceedings.

We are of opinion that the decree of the district court is right.—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.