E. G. COTTER, Appellant, v. FRED KADERA, Appellee.

**BOUNDARIES:** Suddenly Formed River Channel as Boundary. A suddenly formed river channel will not, by any length of time, become a boundary line by acquiescence, in the absence of a showing that one landowner claimed ownership to such new channel, and that the other landowner expressly or impliedly consented to such claim. Especially was this true when the land of the owner asserting such boundary line was separated from the land in controversy by the old channel, title to which was in the state.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

JULY 6, 1920.

SUIT in equity to quiet title to a body of land comprising 7 or 8 acres. The defendant denied the material allegations of the petition, and presented a cross-bill, asking to quiet title in himself to the same body of land. A trial being had, there was a decree for the defendant. The plaintiff appeals.—*Affirmed.*

*Havner, Messer, Clearman & Olsen,* for appellant.

*Hart & Hart* for appellee.

EVANS, J.—Though the plaintiff first pleaded a paper and record title, he afterwards amended, and set up a claim of title by adverse possession and prescription, and by acquiescence in a partition line. The real controversy between the parties rests upon the allegations of this pleading, and turns wholly upon a question of fact. That question is whether the evidence discloses adverse possession

by the plaintiff and his grantors for the statutory period of limitation; or does it disclose acquiescence in a partition line between the respective landowners for the statutory period? The body of land in controversy abuts upon the Iowa River, in Section 28–81–8, in Johnson County. At the time of the government survey of this section, the south quarter of such section was intersected by the Iowa River, running south and southwesterly. Near the south line of the section, the course of the river turned, and formed a bend known in the record as "Horseshoe Bend." The following rough diagram is sufficiently illustrative:

The river was meandered, as navigable. The land abutting thereon on each side was platted into numbered lots by the government survey. Lot No. 5 abutted on the east, and Lot No. 6 abutted on the west. The land within the "horseshoe bend" was a part of Lot 5. Its location is indicated in the above diagram by "a." Sometime subsequent to the government survey, and more than 30 years prior to the trial, the flow of the river cut across the heel of the horseshoe, and established a new channel, which has continued ever since. The quantity of land thus cut off from Lot 5 was somewhat less than 8 acres. It is referred to in the record as the "island," and appears to have been so known locally for some period of time at least. The old channel and the new combined had the effect to completely surround it. It was covered with grass and brush, and

perhaps timber. None of it was tillable. Neither was it valuable, as compared with tillable lands. The title to Lot 5 was conveyed, in 1863, to the Amana Society, and. was held by such grantee until February, 1912, when it was conveyed to this defendant. .

Plaintiff acquired the title to Lot 6 in 1903 from Jiras, who acquired the same in 1900 from Wolf. Wolf had held the title and occupancy for more than 20 years. Up to this point, the evidence is without substantial dispute. The evidence on behalf of plaintiff in support of adverse possession is so slight and inconclusive that we would not be justified in a discussion of its details. The real emphasis of appellant's argument is upon the claim of acquiescence in a boundary line. The title of the Amana Society to Lot 5 was not affected by the new channel of the river. The new channel, however, did affect the convenience of the society in the use and enjoyment of its property. The tract in controversy was physically segregated. It was only a small part of Lot 5. Its character and value were, perhaps, such as not to justify any considerable expense in establishing connections across the river. It remained unused. Some emphasis is laid upon this fact by appellant, as tending to show acquiescence in the new channel as a partition line. It is urged that it was wholly inaccessible to the society or to the defendant, except by crossing the river, or passing over the plaintiff's land. We think such circumstance does not aid the plaintiff's contention. It is not only consistent with nonacquiescence in a change of line, but is explanatory of nonuser by the society of this tract of land, to which it had a perfect title. Moreover, the tract was, in a legal sense, inaccessible to the owner of Lot 6 also, in that it was surrounded by the old river bed, title to which was in the state.

In order to show acquiescence in a boundary line, it was incumbent upon the plaintiff, not only to show that the owners of Lot 6 conceived a purpose to claim to the new channel of the river, but to prove also that the owner of Lot 5 acquiesced in such claim, either in terms or by con-

duct inconsistent with a contrary claim. There is no evidence of such acquiescence, by language or conduct. The only circumstance tending in that direction is that the new channel was there, and that it in fact severed Lot 5. It was not put there as a boundary. At the time that the avulsion occurred, the owner of Lot 6 could not have claimed, in good faith, that it enlarged his rights. The subsequent use of the tract by the plaintiff was of such a nature as to afford but slight evidence of any claim of right on his part. That part of his farm contiguous to the river was used by him as his pasture land. His tillable land and his improvements were further west. His pasture land thus used by him abutted upon the old river channel. His stock encountered no obstacle to the run of the river channel and to the tract enclosed thereby. No fence was maintained along the east boundary of Lot 6. Within 3 or 4 years prior to the beginning of this suit, there was an attempt by plaintiff or his tenant to maintain a fence along the river bank, but it was washed away by the first high water. It appears, also, that, within the same period of time, the plaintiff rented some of his pasture land to the brother of the defendant, and that, in charging rent therefor, he included this tract in his acreage. This evidence would tend to show a claim of right on the part of the plaintiff at that time.

As already indicated, we find the evidence quite insufficient to prove any acquiescence by either owner of Lot 5 in any adverse claim, if any, on the part of the plaintiff, or to prove that either owner knew or had reason to know that the plaintiff was making adverse claim to such tract. The decree below was properly entered for the defendant, and it is—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.