THOMAS L. DAVIS, Appellee, v. CARL ANGERMAN et al., Appellants.

**BOUNDARIES:** Ascertainment and Establishment—Mutual Acquiescence. A party who seeks to overcome the admittedly true line between his property and his neighbor's property by a showing of acquiescence in another line must establish express or implied *mutual* acquiescence in said other line. A naked showing that a fence has existed for a long time on said other line is not sufficient.

*Appeal from Woodbury District Court.*—MILES NEWBY, Judge.

FEBRUARY. 13, 1923.

ACTION in equity, to restrain ·defendants from occupying a strip of ground claimed to be within the boundary .of a tract owned by plaintiff. Defendants pleaded acquiescence, estoppel, and the establishment of the boundary line by agreement. Decree was entered in favor of the plaintiff, and defendants appeal.—*Affirmed.*

*Edwin J. Stason,* for appellants.

*J. A. Berry,* for appellee.

FAVILLE, J.—This case involves a boundary line dispute. The following plat will assist in an understanding of the matters in controversy:

#1. ANGERMAN HOUSE — 3'2½" FROM LINE
#2. BARN — 5'7" OVER LINE
#3. SHED, 9'X10' — ALL ON DAVIS TRACT
#4. OTHER OUTBUILDINGS — 2' OVER LINE

The appellee is the owner of a tract of five acres, designated on the plat as the Davis tract. The line in question extends east and west, and separates this 5-acre tract of the appellee's from the lots of the appellants lying south of the same. Appellant Carl Angerman owns Lots 1 and 13 in Block 4, Hedges Morningside Addition. Appellant John Angerman owns Lots 1 to 6 in Block 4 of Morningside Addition, immediately west of Cypress Street, and appellant Swanson owns Lots 1 and 16 in Block 3 in Morningside Addition, lying between Cypress Street and Maple Street.

Appellee's 5-acre tract is a portion of a tract of 80 acres, the title to which was acquired by one Call, in 1908. Call also acquired title to said Lots 1 and 13, two or three years afterwards. Call divided the 80 acres into 5-acre tracts, and appellee, Davis, acquired the 5-acre tract in question under contract on April 17, 1918, and secured deed thereof one year later. Call sold the said Lots 1 and 13 to Carl Angerman by contract on September 11, 1917, and conveyed by deed on June 2, 1920. Appellant John Angerman purchased his said Lot 1, with other lots, from one Lindsey by contract sometime in the year 1907, and acquired deed thereto on August 10, 1909. Appellant Swanson acquired title to said Lots 1 and 16 in Block 3 on

January 18, 1919, from one Baldwin. The Angermans are father and son. The 80-acre tract was used for farming purposes, and about the year 1910, Call had this surveyed into 5-acre tracts; but thereafter it was farmed as before. The Angermans leased the 5-acre tract in question from Call for some three or four years prior to the time it was sold to the appellee. For some time, they also used Lots 1 and 13 in Block 4 for a garden, by permission of Call. Some time after the purchase of his lot, and about 14 years before the trial, the appellant John Angerman built a house on said Lot 1, as shown on said plat. This house is south of the true boundary line between the tracts in question, and extends partly into Cypress Street to the east. Without any right so to do, Angerman built upon Lot 13 the barn and other outbuildings indicated on the plat. This was done at a time when this property belonged to Call. In 1920, Angerman acquired the title to the said lot upon which the barn and outbuildings had been built. This was acquired after Call had deeded the 5-acre tract to the appellee.

The evidence conclusively establishes that the true boundary line between appellee's 5-acre tract and the property of the appellants lying south thereof is at a point some 12 or 15 feet north of the Angerman house, and that a portion of the barn and other outbuildings constructed by Angerman on said Lot 13 is north of this boundary line, and upon the appellee's tract. It is the contention of the appellants that a fence had been built, extending from the west side of appellee's tract along the south side thereof, and running east of Maple Street for a considerable distance. Appellants contend that this fence became the boundary line between the properties by acquiescence.

The law respecting the establishment by acquiescence of boundary lines that depart from the true governmental line has been so frequently announced by this court as to require no reiteration or review of the cases. Unquestionably, adjacent landowners may, by acquiescence, establish a line that varies from the true line, and the fact of such acquiescence may be established by evidence as to the manner in which the premises have been used by both parties, the building of fences, the planting of trees or other monuments, the erection of buildings, the length of time the property has been so used, and other similar

matters. Whether there is acquiescence necessarily depends upon the facts proved in each particular case. If acquiescence in the assumed boundary line is established, then such line becomes the boundary, regardless of the location of the true or correct line. This is the rule we have repeatedly announced. In *Dwight v. City of Des Moines,* 174 Iowa 178, we said:

"There is no evidence, even on the question of acquiescence, as to how the fence came to be where it originally was, or that any of the owners believed it to be on the true line, or acquiesced in its location. It is simply stated that there was a fence 18 feet west of the west line of plaintiff's land for 25 years prior to 1903. What the purpose was in putting it there, or what purpose it served, the evidence does not disclose. There is at least no evidence that it was there and acquiesced in as indicating the true line between the parties. The plaintiff got all the land that his deed called for, though perhaps not all the land that he thought he was getting. He said that his grantor showed him the old post holes, the holes where the old fence stood, and told him that his land extended back there. He says, however, that the new fence was then erected, and he knew that the defendant was claiming the land west of the new fence. Acquiescence involves more than the building of a fence at a certain point, and then, after building, acquiescing in it as the true line. One cannot acquiesce in a line created by himself and bind another party to such acquiescence, even though he acts in good faith, and believes it to be the boundary line. Acquiescence must be by both parties, to make it a line by acquiescence. Acquiescence is consent inferred from silence—a tacit encouragement. This involves notice or knowledge of the claim of the other party. Acquiescence is where a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that, under the circumstances of the case, the other party may fairly infer that he has waived or abandoned his right."

This language is strikingly applicable to the situation in the instant case. No one assumes to offer any testimony as to when the fence in question was built or by whom it was constructed. There is evidence that it had been in existence many years. Its termini, so far as the property in controversy is con-

cerned, appear to have been indicated by a willow tree at the west end and a cottonwood stump at the east end. The evidence shows that it did not follow a straight line. It was "crooked" and "ragged." It has disappeared, and a ditch marks its location.

Referring to the Swanson property, there is no testimony that Swanson's grantor, Baldwin, who deeded to Swanson in 1919, ever made any claim of any kind or character that the old fence was the boundary line between his lots and the property to the north. There is an utter want of any competent testimony to establish any acquiescence in the fence as being the boundary line between appellee's property and that of appellant Swanson.

As to the portion of the line between the 5-acre tract and Lot 1, on which the Angerman house was built, the proof of acquiescence is also lacking. Angerman had lived there for a number of years. He built his house, not only a considerable distance south of the old fence line, but also south of the true line, as fixed by the survey. The record is strikingly wanting in evidence of any claim on the part of Angerman that the boundary line of this lot was at the fence. He testified that the fence was there when he bought the lot, and that it stood there until about five or six years ago, and that he did not know who took it out, and that he used the property as far north as the fence. Much is claimed for appellants from the fact that the parties used their respective properties to the line of this fence.

Undoubtedly, the use and occupancy by adjacent property owners of their respective tracts to a recognized line, such as a fence, for a long period of time, is persuasive evidence bearing upon the question of acquiescence in such line as the boundary line. But there is no sufficient evidence in this case either that appellant Angerman claimed that his lot extended to the fence or that Call, who owned the Davis tract, recognized that the fence was the boundary of his tract. Angerman rented the 5-acre tract from Call, and farmed it for some years. At the time the fence was put in, that portion of the country was quite unoccupied. The platted streets were not opened. Angerman was not particular about lines and corners. He built his house with a portion projecting into Cypress Street, and erected his

barn and outbuildings on property in which he had no interest at the time. He rented from Call the 5-acre tract and also the lots on which he had built the barn, and farmed them all together. Call says:

"He had strayed over the whole country there,—over all that property; and I had talked with him about it, and let him stay there; and finally he bought Lots 1 and 13. I never fixed any line in there for the Angermans. I never showed them any line and never talked with them about a line."

We do not deem it necessary to prolong the discussion. We fail to find in the record any sufficient evidence upon which to predicate a finding of acquiescence in the line between the properties of the respective parties at the place where the fence referred to in the evidence was located. The true line has been ascertained by repeated surveys, which practically coincide. As established by said surveys, it gives to each of the parties the full measure of property which they purchased, and to which they are entitled. There has been no acquiescence in any other than the true boundary line that would warrant a court in establishing such line in lieu of the true line, nor is the appellee or his grantor estopped to claim to the true line by anything that appears of record in the case. There is no proof of the establishment of the line by agreement of the parties.

The conclusion of the trial court is in accord with our holdings in *Dwight v. City of Des Moines*, supra; *Griffin v. Brown*, 167 Iowa 599; *Cotter v. Kadera*, 189 Iowa 186; *Hootman v. Hootman*, 133 Iowa 632; *Boltz v. Colsch*, 134 Iowa 480; *Longshore v. Copeland*, 181 Iowa 957; and other similar cases.

The decree of the trial court meets with our approval, and it is, therefore,—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.