WILLIAM G. STEVENSON, Appellant, v. F. P. ROBUCK,
Appellee.

**BOUNDARIES:** Acquiescence—Long Continued Recognition—Effect.
1  The recognition, for a period of forty years, of a hedge as the
   boundary line between farms, and the cultivation, during such
   period, of the land up to said hedge, creates an irrevocable
   boundary line by acquiescence.

**BOUNDARIES:**    Acquiescence—Established Lines Not Overturned
2  **by Naked Parol Agreement.**  A parol agreement to relocate
   a boundary line already established by acquiescence is non-
   enforceable unless accompanied (a) by some present consid-
   eration, (b) by possession, or (c) by improvements in reliance
   thereon.

*Appeal from Marion District Court.*—LORIN N. HAYS, Judge.

MONDAY, FEBRUARY 19, 1917.

SUIT to quiet title to a strip of land and obtain pos-
session thereof.  In defense, defendant pleaded ownership,
acquiescence and adverse possession.  On hearing, the pe-
tition was dismissed, and plaintiff appeals.—*Affirmed.*

*Lorenzo D. Teter,* for appellant.

*Crozier & Welch* and *Brammer, Lehmann & Seevers,*
for appellee.

LADD, J.—I.  The plaintiff owns the
1. BOUNDARIES:  SW¼ and the W½ SE¼ of Section 1 in
   acquiescence:
   long continued  Township 94 North, of Range 20 West of the
   recognition:
   effect.         5th P. M., and the defendant, the N½ NE¼
of Section 12 in the same township.  The issue is whether
a strip of land 180 feet wide at the quarter section line
north and south, and 90 feet wide at the quarter quarter
section line to the east, and therefore 80 rods long, belongs
to plaintiff, as a part of the W½ SE¼ of Section 1, or to
defendant, as part of the N½ NE¼ of Section 12.  The
southeast corner of Section 1 is not in dispute, and when

the surveyor, Nye, surveyed to ascertain the true line between Sections 1 and 12, he began at that corner and proceeded westerly 160 rods, keeping about 15 links south of a hedge which had been planted in 1859. After a vain search of some hours for some mark of the quarter corner, he located the southwest corner of Section 1 and then the quarter corner one, halfway between that and the southeast corner of the same section. This placed the quarter corner 2 chains and 72 links south of the line of the hedge. The search for the quarter corner was occasioned by two previous surveys; one by Watkins in 1883, and the other by Frush in 1854. But the record of neither points out the quarter corner, though Watkins set three tile there, and the minutes by him read:

"W. G. Kennedy and John Royer, both sworn, stated that the hedge running west from the corner was set in the line from the corner, and that the hedge on either side of the road was set just 33 feet from the corner, while the original corner was still standing found the point thus indicated and set tile and stone. Set in 1883 by N. J. Watkins."

"Found stone. S. K. Bellamy, sworn, stated that F. M. Frush, county surveyor, found the original corner and placed stone on it. Set tile and stone. Set in 1883 by N. J. Watkins."

Nye testified:

"In 1881, Mr. Watkins, the county surveyor, perpetuated certain government corners; and the records indicate he had placed a tile in the road at the southeast corner of Section 1, and also that the half section mark on the half section corner on the south line of Section 1 was established by Frush when he was surveyor. We also found a stone right at the hedge fence on the west line of the Johnston land. It has the appearance of being a proper corner set by a surveyor. I think it was set by a surveyor. The records do not show anything about there being a

stone there. It is customary for the records to show where
land markers are. The survey was made by Mr. Frush in
1854. If he surveyed in either one of the sections (1 or 12),
he would record it and tell what he put there."

The land of Johnston is the E½ SE¼ of Section 12,
and the stone at the quarter quarter corner is in the hedge
and on the line as claimed by defendant. W. G. Kenne-
dy, nearly 80 years old, testified to having been familiar
with the two sections since 1854, and that he resided on
Section 6 of the township immediately east; that he broke
the ground for the hedge row extending from 33 feet west
of the southwest corner of the section; that at that time
there was a mound about a foot high, on top of which was
a rock set in at the quarter corner to the west; that a line
was staked between these corners and the hedge set out by
Bellamy, who then owned the land now owned by plaintiff;
that Bellamy and the witness' father hauled the plants,
and these were set out in 1859; that he was with Watkins
when he marked the quarter corner, and saw him put in
three tile, with a stone on top of them, at a point 10 or 12
feet west of the end of the hedge and in line with it; that
the owners of the land on each side of the hedge had cul-
tivated up to the same since 1858; that there was a post
set where the tile was put in; that he owned the 40 acres
south of the hedge from 1873 until conveyed to defendant
in 1901; that by arrangement he kept up the division fence
to the west of his 40 acres, and Bellamy kept up that north
of it.

The evidence discloses without dispute that the plain-
tiff and his grantors have occupied up to and not beyond
the hedge during all the years since it was planted, and
that defendant and his grantors have done likewise, and
that there has been no controversy concerning the hedge
as truly marking the division line until shortly prior to the
beginning of this action. True, the son of Bellamy testi-

fied to having heard his father express the opinion that the hedge was not where it ought to be; that he lacked 2 or 3 acres of having what he contended he ought to have, and that his land should extend south to the little slough; that the impression he got of his father's meaning was that the government corner was or should have been further south than the corner as located by the county surveyor where the hedge fence was put in. "I do not think he ever said that was the line. I think his idea was that it was the best he could do." His recollection was that Kennedy did not plant the hedge, and that his father stretched a line for it and that he assisted his father in setting out the plants. As Kennedy did not claim to have planted the hedge, their testimony is not in conflict.

Moreover, the circumstance that Bellamy thought the true line was or ought to be farther south tended strongly to confirm the inference of his having acquiesced in the hedge as marking the true boundary. Though knowing, if so, that the hedge was not on the line, he made no objection to the occupancy and use by defendant and his grantors up to the hedge, as the boundary between their respective farms, and, in addition to marking the line by planting the hedge, for over 40 years occupied and cultivated his farm up to such hedge without questioning it as marking the true boundary in dealing with the adjoining owner. A stronger case of acquiescence is scarcely to be found in the books, and, as the hedge has been acquiesced in as marking the true boundary between the respective tracts of land for the period stated, all parties are bound thereby. Such is the holding of *Miller v. Mills County*, 111 Iowa 654, and a long line of cases following it, many of which are found in the briefs. We are of the opinion that the line of the hedge has been so established as the true division line between the respective farms.

**2. Boundaries:** acquiescence: established lines not overturned by naked parol agreement.

II. Appellant contends, however, that the parties agreed, immediately after the survey of Nye, that the line established by him should constitute the boundary between their lands, and that thereafter fences should be constructed along that line, and that, as defendant had prepared the land up to the hedge, he should put in the crop and pay plaintiff the usual rental therefor. This is disputed in some respects by defendant, but, even if true, it in no wise estopped him from declining to carry out the oral agreement. It was merely an oral agreement to fix the division line without any present consideration. Possession was not given in pursuance thereof. If defendant was to rent the land, he continued in possession as before. No improvements were made on the strength of the agreement. In *Kitchen v. Chantland,* 130 Iowa 618, the agreement as to the true line was followed by possession in pursuance thereof, and improvements made such that, had there been a plea of estoppel, the defendant must have been defeated on that ground alone. That possession must be taken or improvements made or something else done in pursuance of an agreement in parol fixing a boundary, in order to render it binding on the parties thereto, is settled in *Uker v. Thieman,* 132 Iowa 79, and *Fredricksen v. Bierent,* 154 Iowa 34. As nothing was done in pursuance of or by way of performance of the oral understanding of the parties, neither was bound thereby, and it may not be enforced.—*Affirmed.*

Gaynor, C. J., Evans and Salinger, JJ., concur.