## CARSTENSEN v. BROWN.

(No. 979; Decided Dec. 18, 1919; 185 Pac. 567.)

Appeal and Error—Record Need Not Show Notice to Judge—Evidence—Presumption of Notice Given by Clerk—Adverse Possession—Boundaries—Estoppel.

1.  The direct appeal statute, Laws 1917, Chapter 32, Section 10, does not require the record to show that the Clerk

notified the Judge within five days after specifications of error are filed in his office, that the record on appeal is perfected. It is made the duty of the Clerk to give such notice and in the absence of a showing to the contrary, it will be presumed that he performed the duty.

2. Statement of plaintiff's adjoining landowner to a purchaser of his land that a certain fence was the true boundary line, was not binding on plaintiff, so as to estop him from denying that such line was the true boundary line; such statement being made without his knowledge or assent.

3. Where adjoining landowners were both ignorant as to the true boundary, and each had an equal opportunity to ascertain the facts, but failed to do so, one of them was not estopped to deny that a fence was the true boundary line, by reason of the other making improvements on the subsequently disputed strip.

APPEAL from District Court, Washakie County; HON. P. W. METZ, Judge.

Action by Henry A. Carstensen against Earl Brown to recover possession of lands involved in a disputed boundary. There was judgment for defendant and plaintiff appeals.

*H. W. Rich,* for appellant.

The motion to dismiss is not well taken; the statute, Sec. 10, Chapter 32, Laws 1917, does not require the record to show notice to the Judge; there is a contrary inference since the section requires the record to be made up and filed before such action be taken by the Clerk; adverse possession cannot be predicated upon a mistake as to the true boundary line; the appellant is not estopped from asserting his rights by reason of statements made by adjoining land owners; he is not bound by a mistake as to the true boundary (Bayton v. Waters, 177 Pac. 525; Fieldhouse v. Leisburg, 15 Wyo. 207; Skinner v. Crawford, 54 Iowa 119; Crawford v. Hebrew, 96 Pac. 348; Mfg Co. v. Packer, 129 S. W. 760; Scott v. Williams, 87 Pac. 550; Treese v. Ass'n, 122 Fed. 598), and other cases cited in the brief show the rule to be universal (Brownlee v. Williams, 77 Pac. 250); the Government survey under which plaintiff claims, stands unchallenged, and must control (Vincent v. Blanton, 85 S.

W. 703; Colonization Co. v. Flipper, 29 S. W. 813); estoppel does not arise from silence or inaction, unless the claimant knows there is occasion to speak or act (Griffin v. Nichols, 51 Mich. 575); especially when the means of knowledge is equally open to both parties (Cantley v. Morgan, 51 W. Va. 304); intruction No. 1, given by the court, is misleading and prejudicial; instruction No. 5 did not state the law with reference to estoppel; the court erred in refusing instruction No. A (Betz v. Mathiowitz, 72 Minn. 443); the court erred in refusing to instruct the jury on the statute of limitations (Sutton v. Clark, 82 Am. St. Rep. 853); defendant's evidence shows that plaintiff was estopped from asserting his rights to the land; defendant's affirmative defenses were sustained; the verdict of the jury is contrary to law and the evidence.

*C. H. Harkins* and *H. C. Brome,* for appellee.

The record fails to show notice by the Clerk to the Judge, and the appeal should be dismissed; appellee failed to prove ownership of the land in controversy; plaintiff must recover upon the strength of his own title, and in this he failed; the original government corners are controlling (9 Corpus Juris 164; Craigon v. Powell, 128 U. S. 691; U. S. Comp. Stat. 1918, Sec. 4803); field notes are competent to establish lost corners (Galbraith v. Parker, 153 Pac. 283; Washington Rock Co. v. Young, 290 Utah 106; Stangair v. Roads, 41 Washington 583; Ogilvie v. Copeland, 145 Ill. 98; Read v. Bartlett, 255 Ill. 76); appellant is estopped to claim land lying east and north of the boundary fence occupied by defendant by his own silence and inaction (Hayes v. Livingston, 34 Mich. 384); the question of adverse possession was properly submitted to the jury; the authorities are in conflict as to whether adverse rights may be established under a mistaken belief; the cases are reviewed in the Idaho case of Bayhouse v. Urquides, 105 Pac. 1066, but there was no mistake in the present case (Allen v. Lewis, 177 Pac. 433; Fieldhouse v. Leisburg, 15 Wyo. 207; Bryant v. Cadle, 18 Wyo. 64).

BEARD, CHIEF JUCTICE.

In this case the parties occupy the same relative positions as in the District Court and will be referred to as plaintiff and defendant.

Plaintiff has the legal title to the SE¼ of the SW¼ of section 21, and the NE¼ of the NW¼, and the W½ of the NE¼ of section 28, Tp. 48 N., R. 89 W. of the 6th P. M. Defendant has the legal title to the E½ of the NE¼ of section 28, and the S½ of the SE¼ of section 21, in said township and range. Plaintiff brought the action against the defendant, alleging that defendant wrongfully kept him out of possession of his said lands. Defendant answered, alleging, in substance, that in 1901, plaintiff's grantor, one Oscar McNay, entered the land described in plaintiff's petition as a homestead, and during said year established the boundary line between said land and the land lying to the east and north thereof, and now owned by defendant, by building a fence along said boundary line. That in 1904 McNay obtained a patent for said land and conveyed the same to the plaintiff, who immediately thereafter took possession of the land lying west and south of said boundary line and has resided upon and cultivated the same since that time. That about 1902, one William Greet entered the land, now owned by defendant, as a homestead. That Greet was advised that the fence established by McNay was the true boundary line between said lands. That in the latter part of the year 1904, defendant purchased the improvements on the land entered by Greet, who thereupon relinquished his filing, and defendant filed on the same as a homestead. That defendant had no information or knowledge respecting the boundary line between said lands other than the information conveyed to him by Greet, which was that the fence above mentioned was the true boundary line between said tracts. That relying on the statements of Greet and the fact that he was in possession of all the land lying immediately east and north of said fence and cultivating and farming the same, was induced to and did pay Greet $1,000.00 for his improvements, and thereafter filed thereon as a homestead, and

from the year 1905 has been continuously in the open, notorious, visible and exclusive possession of said land, irrigating, cultivating and using all of said land lying east and north of said fence, and had made valuable improvements thereon. That he obtained a patent for the said E½ of the NE¼, Sec. 28, and S½ of the SE¼, Sec. 21, in April, 1914. That plaintiff maintained said fence as the true boundary line between the respective tracts and never asserting any claim or right to the land east and north of said fence. He pleads an estoppel, and also title by adverse possession. The reply admitted that defendant had no information or knowledge of the true boundary line. Admitted that defendant made homestead entry as alleged, and that he had been in possession of the land described in his homestead entry since the date of making the same. Denied the other allegations of the answer.

The case was tried to a jury which returned a verdict in favor of defendant. A motion for a new trial was denied and judgment entered on the verdict, and plaintiff appeals.

The defendant has filed a motion to dismiss the appeal for the reason and on the ground that it does not appear from the record on appeal that the judge of the District Court, before whom the action was tried, was notified in writing, or at all, that the record on appeal in the case had been perfected and was on file in the office of the clerk of the District Court, as required by section 10, chapter 32, S. L. 1917. Said section provides, "The Clerk of the District Court shall, within five days after the specifications of error are filed in his office, notify the judge of the District Court before whom the action was tried, in writing, that the record on appeal in the cause is perfected and on file in his office," etc. There is nothing in the statute requiring that the record on appeal shall show that such notice was given. Also the record on appeal must be perfected and filed in the office of the clerk of the District Court before the notice is to be given, and, therefore, the notice could not be a part of such record. The clerk is presumed to have done his duty by giving the notice, at least in the absence of any showing to

the contrary.   The motion to dismiss the appeal, therefore, is denied.

The controversy in this case is over a strip of land between a certain fence and the boundary line between the lands to which the respective parties have the legal title, and contains about fifty acres.   There is not much conflict in the evidence, which is to the effect, that, prior to 1903, and probably in 1901, one McNay made homestead entry on the land to which plaintiff has the legal title, and built the fence. It appears that very few, if any, of the monuments marking the original government corners in the townships in which these lands are situated could be found, and McNay had a line run by a surveyor from a supposed quarter section corner presumably on the north line of the township (as McNay testified that the surveyor called it a correction line) "down" some distance but found no established corners.   He then told McNay to look through the instrument and step off a half mile and he would come to his east line; and it was in that manner McNay located the fence, determining the course north and south, as he says, by the shadow of the sun at noon.   He says that the fence was not built with reference to government corners because none could be found.   In 1904 or 1905 McNay sold and conveyed the land to plaintiff and another, and shortly thereafter plaintiff acquired the full title.   In 1903, one Greet filed on the land to which defendant now has the legal title, and in 1904, defendant bought his improvements and he relinquished and defendant filed on the land as a homestead and has since been in possession and has irrigated and cultivated the strip in controversy, or a part of it, up to the fence.   Greet testified that he showed defendant the land "he naturally supposed was on the place."   Did not show him any boundary lines of the place.   Had no conversation with him about the fence. Supposed that the fence was the line, but did not know whether it was or not.   Only claimed the land because he thought it was part of his homestead.   Defendant testified that Greet told him the fence was the line.   That he claimed to own to the fence; but on cross-examination stated, "I am

claiming that land because I thought that was the land I was filing on." After repeating that statement his attorney asked him the question, "And you may state whether or not, Mr. Brown, at all times since you have been there you have intended to claim and hold the land to that fence whether it was the true line or not? A. Yes, sir." He further testified that he claimed the land because he had been in possession for more than ten years. That he never knew where the line was. That he found out soon after he filed on the land that there was a question about the line. That he was told the line might be east of the fence. There is no evidence that either plaintiff or his grantors ever stated or represented to defendant that the fence was the boundary line. He never paid taxes on any land except that described in his patent, while plaintiff paid the taxes on the land to which he has the legal title. There is no evidence that the fence was ever established as the boundary between their premises by the parties by agreement, or that they ever had any conversation about it. H. J. Arnoldus testified that he had two or three buyers who would have bought the place if they could have located the line, that the question of the line always came up. That in June, 1917, he asked defendant if he had the land surveyed when he got it so that he would be located through a surveyor, and he said no, he just took what was left, he supposed that that fence was about the line. Plaintiff testified that government corners could not be found and that he did not know where the boundaries of his land were until 1918. It appears that during that year Alex. Douglas, a United States surveyor, by direction of the Assistant Supervisor of Surveys, was assigned to make a re-survey of Township 48, Range 89 West of the 6th P. M., according to special instructions given him by the Surveyor General for Wyoming. He testified that he made a survey accordingly, the purpose of which was to restore the section lines in a position as near as possible as they were originally laid down by the original survey, which he did. It is upon that survey that plaintiff bases his claim. Defendant further testified that the ditch which carried

water to irrigate the land in dispute, and as we understand the evidence other lands of plaintiff and defendant, was completed in 1904 and 1905, and was built jointly by the parties (and perhaps others) as he states, "Why we all helped build it." That he did not make the application for water right. That in 1908, plaintiff, defendant, and one Utiger broke up some new land, some on defendant's place and some of plaintiff's, as partners, sharing the crop equally. (The record fails to show where this land was situated.) Utiger testified that in 1908, plaintiff stated to him that "if he would set the line or, if the line would be on the place it belonged he would probably take in half the place of Mr. Brown." Plaintiff denied ever having made such statement. The foregoing statement, we believe, contains the substance of the material evidence in the case.

We do not consider the evidence sufficient to sustain the defendant's claim to the strip of land in controversy by prescription. He repeatedly testified that he claimed it because he thought it was a part of the land upon which he had filed and for which he afterwards received a patent. It is true that in answer to a leading question he stated that he intended at all times to claim and hold to the fence whether it was the true line or not; but that statement is in direct conflict with his former repeated statement, and inconsistent with an honest purpose. We are not convinced that it was his deliberate intention to take from his neighbor between forty and fifty acres of land to which he had neither title nor right; but, on the contrary, to take only that described in his entry and patent; and that in taking possession of the strip he did so under the mistaken belief that it was a part of the land he had entered, and without intention of claiming beyond the true boundary thereof. Giving to the evidence the full probative force to which it is entitled, the case on that point comes within the rule announced by this court in Fieldhouse v. Leisburg, 15 Wyo. 207, 88 Pac. 214, followed in Allen v. Lewis, 177 Pac. 433.

The defendant also pleads an equitable estoppel, alleging that in 1901 plaintiff's grantor established the boundary line

between his said land and the land lying to the east and north thereof, by building a substantial fence along all of said boundary line, and that plaintiff has since that time maintained said fence as the true boundary line between said tracts, and at all times acquiescing in and agreeing to the boundary line as established by his grantor. There is some apparent conflict in the adjudicated cases arising from difference in the evidence in the several cases, and it has frequently been said that no hard and fast rule can be laid down, but each case must be governed by the facts of the particular case. There are certain well defined and established rules applicable to all cases. The requisites of an estoppel in pais, or equitable estoppel are stated in 2 Pomeroy's Equity Jurisprudence, sec. 805, as follows: "(1) There must be conduct—acts, language, or silence—amounting to a representation or concealment of material facts. (2) These facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon." And in 11 A. & E. Enc. Law (2nd Ed.) 434, "It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of facts, but was destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." This last quotation is taken almost literally from Brant v. Virginia Coal &. Iron Co., 93 U. S. 326, 23 L. Ed. 927, and cases from many states

are cited in the notes. To the same effect see 16 Cyc. 738, 10 R. C. L. 695; L. J. Upton & Co. v. Ferebee, 100 S. E. 310 (N. C. 1919); Foard v. McAnnelly, 215 Mo. 371, 114 S. W. 990.

Applying these rules to the evidence in this case, was there sufficient substantial and credible evidence to support the verdict and judgment; and was the jury correctly instructed as to the law of estoppel? Upon that branch of the case the court instructed the jury as follows:

"You are instructed that if plaintiff's grantor established the fence shown upon the maps in evidence as the eastern boundary of his land and plaintiff purchased said land and entered into the occupation of it, knowing that said fence had been built and was being maintained and kept in repair as the eastern boundary line of plaintiff's land, and in 1908 knew that said fence was some distance west of the correct boundary, and if you further find that after the establishment of said line and the construction of said fence, the defendant purchased the improvements upon and acquired title to the tract of land lying immediately east and north of plaintiff's land, believing and having good cause to believe that said fence was the true line between said tracts and if you further find that defendant has, with the knowledge and acquiescence of plaintiff occupied, cultivated and used and placed valuable improvements on the land lying immediately east and north of said fence continuously for the past fifteen years, then you are instructed that plaintiff is estopped from maintaining or claiming that the boundary line between said tracts of land is east and north of the place where said fence is now located and your verdict should be for the defendant."

There is no evidence in the record that plaintiff's grantor (McNay) established the fence as the eastern boundary of his land. He testified that the fence was not built with reference to government corners for the reason that they could not be found, and stated the manner in which he attempted to approximate the line; but there is no evidence that he at any time stated or claimed it as the true line. It must be

borne in mind that we are here considering the question of estoppel in the absence of any specific agreement between the parties that the fence should be regarded as the true line between their respective lands, and it does not appear that at the time defendant purchased the improvements from Greet, and which he supposed to be on the land filed on by Greet, that any of the parties knew the location of the true line. Nor does it appear that plaintiff knew where the true line was until the survey in 1918. Assuming, for the purposes of the case, that he stated to Utiger in 1908 that "if he would set the line or if the line would be on the place it belonged he would probably take in half the place of Mr. Brown," does not show that he then knew its true location. The evidence fails to show when the improvements defendant claims to have put on the land were made, but tends to show that it was prior to 1908, at which time plaintiff was ignorant of the true location of the line between their lands; but it is perfectly apparent that each had equal opportunity and facilities for learning the truth. No statement by Greet as to the location of the line made without the knowledge or assent of plaintiff could bind him; and had defendant inquired of McNay or plaintiff he could have learned the facts, or he could have had his land surveyed. There is no evidence in the record showing that defendant made the improvements or did any act to his detriment in reliance upon any act or statement of the plaintiff. Not only that, but he admits that soon after he filed on the land he was told that the line might be east of the fence. Both parties being ignorant of the true location of the line between their lands, and each having equal opportunity to ascertain the true location of the line, under the rules above stated the defendant is not, for that reason also, in a position to invoke the doctrine of equitable estoppel.

The instruction given to the jury, we think, was calculated to mislead and probably did mislead the jury. It stated only a part of the law applicable to the evidence, and they should also have been told, in effect, that if they found from the evidence that the parties were both ignorant as

to their true boundary, and that before making the improvements, if any, by defendant which he claims to have made he had an equal opportunity to ascertain the facts but failed to do so, he cannot invoke the doctrine of equitable estoppel. The evidence in the record is not as satisfactory as we would like, but taken in connection with the omission in the instruction, equity and good conscience require a reversal of the judgment, and that the cause be remanded for a new trial, and it is so ordered.                              *Reversed.*

POTTER, J., and BLYDENBURGH, J., concur.