## CARSTENSEN v. BROWN*
(No. 1169; May 19, 1925, 236 Pac. 517)

APPEAL AND ERROR—DECISION ON FIRST NOT DECISIVE OF NEW QUES-
TIONS ON SECOND APPEAL—BOUNDARIES—IMPLIED AGREEMENT—
PAROL AGREEMENT—ESTABLISHMENT BY ADVERSE POSSESSION—DI-
VISION FENCE—ACQUIESCENCE—LIMITATION OF ACTIONS.

1. Decision on first appeal of case which was reversed and re-
   manded, *held* not to bar consideration of new questions
   raised on second appeal, notwithstanding evidence in both
   was not materially different.

2. To enforce express parol boundary agreement, it must be
   followed up by occupancy of parties, according to agree-
   ment, and must have been in dispute, uncertain, or not
   readily ascertainable, to furnish consideration.

3. Agreement to fix an uncertain or disputed boundary may
   be implied by conduct of parties.

4. To establish boundary under implied agreement of recog-
   nition or acquiescence, period 'at least equal to limitation
   in case of adverse possession is required, and occupation
   will not become binding by mere show of intent, as such
   possession might not evince clear intention to recognize
   boundary as permanent.

5. To establish boundary under implied agreement, acquies-
   cence must be by both parties, each having notice and
   knowledge of claim of other and giving assent thereto.

6. Existence of division fence does not alone show acquies-
   cence in boundary, as fence may have been kept up only
   for convenience of parties.

7. Mistake as to original boundary line, established by gov-
   ernment or other authority does not prevent application
   of doctrine of recognition and acquiescence, nothwith-
   standing parties may not intend to claim more than deed
   or patent.

8. Where there had been 'an uncertainty in regard to boun-
   dary, recognition of division fence as line, as shown un-
   der evidence, for eighteen years, *held* bar to claim accord-
   ing to true boundary, especially where lands were home-
   steads acquired for actual settlement and cultivation un-
   der U. S. Rev. St. § 2290 (U. S. Comp. St. § 4531).

*NOTE—See Headnotes—(1) 4 C. J. p. 1099; (2) 9 C. J. pp.
233, 234; (3) 9 C. J. p. 232; (4) 9 C. J. p. 245; (5) 9 C. J. p. 246;
(6) 9 C. J. p. 246; (7) 9 C. J. pp. 244, 260; (8) 9 C. J. p. 245.

APPEAL from District Court, Washakie County; PERCY W. METZ, Judge.

Action by Henry A. Carstensen against Earl Brown to recover a strip of land involved in a disputed boundary. There was judgment for plaintiff and defendant appeals.

*H. C. Brome* and *C. H. Harkins* for appellant.

Defendant's action is barred by limitation; there was acquiescence as to the boundary marked by a fence for more than 10 years; Miller v. Co. (Ia.) 82 N. W. 1038; the government survey cannot affect a line agreed by coterminous owners; Tracy v. Newton (Ia.) 10 N. W. 636; Hiat v. Kilpatrick, 48 Ia. 78; Foulche v. Stockdale, 40 Ia. 99; Davis v. Curtis, (Ia.) 25 N. W. 932; acquiescence in a division line followed by actual occupany for a period equal to the time prescribed in the statutes of limitation is conclusive; Sneed v. Osborn, 25 Calif. 628; Wingler v. Simpson, 93 Ind. 203; Hubbard v. Stearns, 86 Ill. 35; Diehl v. Zanger, 39 Mich. 602; Berry v. Garland, 26 N. H. 473; O'Donnell v. Penney, (R. I.) 20 Atl. 305; Gwynn v. Schwartz, (W. Va.) 9 S. E. 880; Crowell v. Beebe, 10 Vt. 33; there are a few cases to the contrary; Davis v. Caldwell (Ala.) 18 So. 103; Worcester v. Lord, 56 Me. 265; but the weight of authority is the other way. Plaintiff failed to prove ownership; plaintiff must recover upon the strength of his own title; original government corners, if found, are conclusive, 9 C. J. 164; Cargin v. Powell, 128 U. S. 691; a resurvey is but the retracing of the line; 4903-4824 U. S. C. S. 1918.; a resurvey is without force until approved; Medley v. Robertson, 55 Calif. 396; Garfield v. Wilson, 74 Cal. 175; United v. Curtner, 38 Fed. 1. Kendall v. Bunnell, 205 Pac. 83; field notes are the best evidence when corners are lost, Galbraith v. Parker, 153 Pac. 283; Stangair v. Roads, 41 Wash. 583; Reed v. Bartlett, 255 Ill. 76; under this rule plaintiff's evidence is insufficient to locate the East line of his land. Resurveys are not permitted to impair bona fide rights, 4824 C. S. 1918.

*R. B. Landfair* and *R. B. West* for respondents.

Where adjoining owners are ignorant of the true boundary there is no estoppel to deny that a fence was a true boundary, 26 Wyo. 356. The question of acquiescence and estoppel was settled by this Court on the same issues and the same record in a former hearing; this established a prima facie case for plaintiff and placed the burden on defendant to prove title by adverse possession. Brown was not claiming Carstensen's land, but his own, as he supposed; this is not adverse posesssion, nor is it acquiescence and estoppel in the plaintiff; Fieldhouse v. Leisburg, 15 Wyo. 297.

BLUME, Justice.

This is an action brought on January 13, 1919, by the plaintiff, H. A. Carstensen, against defendant, Earl Brown, to recover a strip of land hereinafter mentioned. The parties will herein be referred to in the same manner as in the court below.

Plaintiff has the legal title to the SE¼ of the SW¼ of Section 21, and the NE¼ of the NW¼ and the W½ of the NE¼ of Section 28, Township 48, Range 89 West of the 6th P. M. Defendant has the legal title to the E½ of the NE¼ of Section 28, and the S½ of the SE¼ of Section 21 in said Township and Range, which adjoins the land of the plaintiff on the east and partially on the north. Plaintiff brought this action against the defendant, alleging that the latter wrongfully kept him out of possession of his said lands. Defendant answered, alleging in substance that in 1901 plaintiff's grantor, one Oscar McNay, entered the land described in plaintiff's petition as a homestead, and during said year established the boundary line between said land and the land lying to the east and north thereof and now owned by defendant, by building a fence along said boundary line; that in 1904 McNay obtained a patent for said land and conveyed the same to the plaintiff, who immediately thereafter took possession of the land lying west and

south of said boundary line, and has resided upon and cultivated the same since that time; that about 1902 one William Greet, entered the land now owned by defendant as a homestead; that Greet was advised that a fence established by McNay was the true boundary line between said lands; that in the latter part of the year 1904, defendant purchased the improvements on the land entered by Greet, who thereupon relinquished his filing, and Brown filed upon the same as his homestead; that defendant had no information or knowledge respecting the boundary line between said lands other than the information conveyed to him by Greet, which was that the fence above mentioned was the true boundary line between said tracts; that the lands susceptible of irrigation upon said tract occupied by said Greet contains about sixty-nine acres and lies immediately east and north and next to said established boundary line; that relying upon the statements of Greet and the fact that he was in possession of said land lying immediately east and north of said fence and cultivating and farming the same, he was induced to and did pay Greet $1,000 for his improvements and thereafter filed thereon as a homestead, and from the year 1905 has been continuously in the open, notorious, visible and exclusive possession of said land, irrigating, cultivating and using said land lying east and north of said fence, and made valuable improvements thereon; that he received a patent for his said land on April 28, 1914; that plaintiff prior to November 23, 1918, at all times maintained said fence as the true boundary line between said tracts, never at any time prior to said date asserting any right to or claim upon any land lying east and north of said fence, but at all times acquiescing in and agreeing to the boundary line as established by his grantor, and that plaintiff is accordingly estopped from making any claim or asserting any interest in the land lying east and north of the said fence. Defendant, as a separate defense, also pleaded adverse possession. The case was tried to a jury, which returned a verdict in favor of said defendant. There-

upon an appeal was taken to this court. The opinion in that case appears in 26 Wyo. 356, 185 Pac. 567. This court in that case held that the evidence was not sufficient to prove adverse possession, but reversed the case for an erroneous instruction on estoppel. The case was retried to a jury in the court below, with but little additional evidence taken. The court directed the jury to return a verdict in favor of plaintiff, which was accordingly done and judgment entered thereon May 20, 1922, from which judgment the present appeal is taken.

The dispute in this case is over a strip of land east and north along the boundary fence hereinbefore mentioned and the plaintiff seeks to move that fence to the east a sufficient distance so as to take of the lands heretofore claimed by the defendant, about forty-six acres. The land claimed by defendant contains only about sixty-nine acres of land fit for irrigation, all of it lying next to the fence in controversy. A ridge or bluff runs along the eastern portion of the lands of defendant, covering lands that are barren and of no value, and to move the fence in accordance with the claims of the plaintiff would leave the defendant with only a little over twenty acres of land out of a total of one-hundred sixty acres, which would be of any value. There is not much conflict in the evidence. Prior to 1903 and probably in 1901, one McNay made homestead entry on the land to which plaintiff has the legal title, and built the fence in question. It appears that very few, if any, of the monuments marking the original government corners in the township in which these lands are situated, could be found, and McNay had a line run by a surveyor from a supposed quarter section corner on what is called Buffalo Flat. The record does not show how far this corner is from the land in controversy. In any event, the surveyor surveyed up to a point approximately half a mile from the line on which the fence was subsequently built. The surveyor told McNay to look through his surveying instrument and step off a half mile and he would come to his east line, and it was

in that manner that McNay located the fence, determining the course north and south, as he says, "by the shadow of the sun at noon." He stated that the fence was not built with reference to government corners, because none could be found. In 1904 and 1905 McNay sold and conveyed the land to plaintiff and another and shortly thereafter plaintiff acquired the full title. In 1903 one Greet filed on the land, to which the defendant now has the legal title. In 1904 his possessory right and improvements were bought for $1,000 by the defendant, who thereupon filed on the land as a homestead, and who since that time has been in possession thereof, has irrigated and cultivated the strip in controversy and has made some valuable improvements thereon, the extent of which does not clearly appear. Greet testified that he showed defendant the land which, he presumed to be his homestead, and of which he presumed the fence to be the west and south line. A house had been built on the strip in controversy and was occupied by Greet and subsequently by the defendant in this case until a new house was built later. Greet supposed, from statements made to him, the source of which does not appear, that the fence constituted the true boundary line. The defendant testified that Greet told him that the fence was the line; that he had made claim to the land east and north of the fence aforesaid from the time that he had taken possession thereof, and that he paid taxes on the land under ditch on the east side of the fence. It appears from the testimony, that plaintiff and defendant exchanged work from time to time, and plaintiff never made any claim to any land east and north of the fence until the survey hereinafter mentioned was made. The witness Ilg testified that about 1914 the plaintiff showed him a boundary line on the northwest of the latter's land, which is supposedly a quarter of a mile west of the northern portion of the fence in controversy. During 1918 one Douglas, a United States surveyor, by direction of the Assistant Supervisor of Surveys, was assigned to make a re-survey of the township in which the land in

controversy is located, according to special instructions given by the Surveyor General of Wyoming. He testified that he made a survey accordingly, the purpose of which was to restore the section lines in a position as near as possible as they were laid down by the original survey. It is upon that survey that plaintiff bases his claim. It has not, however, been as yet approved by the United States Land Office and whether or not the lines as established by this surveyor, are in accordance with the original survey, is perhaps still a question. A few other facts will be stated hereafter and some additional facts may be found stated in the opinion of this court on the previous appeal, which were then considered of importance in connection with the claim of adverse possession and estoppel, but need not be referred to at greater length herein.

The questions considered in the former appeal were that of adverse possession and that of estoppel, and no others. A new question has been presented on this appeal, namely as to whether or not the fence above referred to became the true boundary between plaintiff and defendant under the doctrine of recognition and acquiescence thereof. Hence although the evidence is not materially different from what it was on the former appeal, we do not think that the rule that the decision on the former appeal is the law in this case, bars us from considering the new questions thus presented, and from deciding the case upon the record now before us. 4 C. J. 1906.

The doctrine of recognition and acquiescence of a boundary line is upheld by many authorities. 9 C. J. 244; Tiffany, Real Property (2nd Ed.) sec. 295; Thompson on Real Property, sec. 3112. It is sometimes referred to as acquiescence in, or as a practical location of, or as an implied agreement as to, a boundary. Considering all of the various jurisdictions in the United States, the doctrine is still in a chaotic condition, and no one has yet undertaken to point out definitely the circumstances under which it is applicable. Some of the authorities consider long acquiescence only as

evidence of a boundary, which may be contradicted. Tiffany, supra, sec. 295. Other authorities say that an agreement may be inferred or presumed from such acquiescence. Note, 110 A. S. R. 685. The doctrine seems to occupy a middle ground between adverse possession and estoppel in pais. It is frequently held that in order to work an estoppel by conduct it is necessary that the party against whom it is claimed, should have knowledge of the true boundary (Bigelow on Estoppel, 16th Ed., page 674) and as said in Carstensen v. Brown, 26 Wyo. 360, 185 P. 567 where both parties are ignorant thereof and have an equal opportunity to know the facts, no estoppel arises. It may be said however, in this connection, that in many states long acquiescence is accepted as a substitute for knowledge of the facts, and an estoppel may arise in cases of mistake by acquiescence, in connection with a change of situation. Bigelow, supra, page 675. See Lehman v. Smith, 40 S. Dak. 556, 168 N. W. 857, where some distinctions between the two doctrines were pointed out. In adverse possession it is requisite, according to the majority of decisions, including Fieldhouse v. Leisburg, 15 Wyo. 207, 88 Pac. 214, that there be an intent to claim up to a marked division line without reference to where the true line may be, and if it appears that there was only an intent to hold to the true line, the possession is not adverse and no title by prescription may be obtained. Note 15 Ann. Cas. 827; Note Ann. Cas. 1912 A. 450; 2 C. J. 139. Indeed some of the authorities have held that no title by adverse possession can be acquired through a mistake, although in the greater number of cases at least, some mistake exists when possession is taken of another's property. Note 21 L. R. A. 831. Such holding practically results in this: that the intent necessary to make possession adverse is akin to a felonious intent (Ibid), thus virtually making it impossible to gain any prescriptive title. The trend of opinion is said in a note to 33 L. R. A. N. S. 930, to be against disturbing a person whose visible boundaries have existed for the period of the statute of limitations. In-

deed some of the authorities have distinctly repudiated the view that it is necessary to claim beyond the true boundary, and that if a man occupies and claims what he believes to be his own, his possession is adverse and ripens into title upon the expiration of the statutory time. Yetzer v. Thoman, 17 Ohio St. 130, 91 A. D. 122; French v. Pearce, 8 Conn. 440, 21 A. D. 680; Bayhouse v. Urquides, 17 Idaho 286, 105 Pac. 1066. Notes 15 Ann. Cas. 829; Ann. Cas. 1912 A. 451; Ramsey v. Ogden, 23 Or. 347, 31 Pac. 778. It would seem that in Ohio and Indiana, the courts treat recognition and acquiescence in a boundary line for a period equal to that of the statute of limitations the same as adverse possession for a like period. Yetzer v. Thoman, supra; Helbling v. Realty Co., 2 Ohio App. 478; Rutledge v. Presbyterian Church, 3 Ohio App. 177; Eppstein v. Kraft, 16 Ohio Cir. Ct. N. S. 251; Thomas v. Webber, 13 Ohio N. P. N. S. 301; Scheigert v. Boyer, 69 Ind. App. 674, 122 N. E. 670; Rosenmeier v. Mahrenholz, 179 Ind. 467, 101 N. E. 721; Dyer v. Eldridge, 136 Ind. 654, 36 N. E. 522. But according to most of the courts, it is not identical with it, and the two doctrines are treated as distinct. Miller v. Mills County, 111 Iowa 654, 82 N. W. 1038; Morley v. Murphy, 179 Iowa 853, 162 N. W. 63; Hubbard v. Stearns, 86 Ill. 35; Brummel v. Harris, 148 Mo. 430, 440, 50 S. W. 93; Schwartzer v. Gebhart, 157 Mo. 99, 104, 57 S. W. 782. See Lehman v. Smith, supra. The distinction is pointed out in the last cited case as follows:

"It is well settled that the possession of coterminous proprietors under a mistake or in ignorance of the true line, between them and without intending to claim beyond the true line, will not work a disseizin, and set in motion the statute of limitation in favor of either, but it is equally as well settled, that when such proprietors, in ignorance of the true line, fix and agree upon a permanent boundary line, and possession is taken accordingly, the agreement is binding upon them, and those claiming under them. (Jacobs

v. Moseley, 91 Mo. 457.)   Such an agreement is not within
the statute of frauds.   (Taylor v. Zepp, 14 Mo. 482; Blair
v. Smith, 16 Mo. 273; Turner v. Baker, 64 Mo. 218; Acton
v. Dooley, 74 Mo. 63.)   Nor is it necessary that such an
agreement should be shown by direct evidence, but it may
be inferred from the acts and conduct of the parties, and
their long acquiescence and recognition of the line estab-
lished as the true line.''

It is well settled that parties may make an express parol
agreement as to a boundary line.   9 C. J. 230.   But to have
a basis for consideration it must be in dispute or uncertain
and not readily ascertainable, and to take it out of the stat-
ute of frauds it must be followed up by occupancy by the
parties in accordance with such agreement, up to the line
agreed on.   9 C. J. 231-237.   Note 10 L. R. A. N. S. 610.
It would seem that the elements of mistake involved, both
in estoppel as well as adverse possession, are eliminated in
a case when parties deliberately enter into an agreement
under such conditions, in the absence of special circum-
stances which would relieve a party from a mistake, because
want of knowledge of the true boundary, and uncertainty
thereof, is made the very basis of the agreement.   See 9 C.
J. 231; but see 9 C. J. 237.   The doctrine of recognition and
acquiescence would seem to be based primarily, though not
solely, upon the same principles as an express agreement.
Some of the cases appear to ignore the factors of uncer-
tainty or dispute, and in some instances of long recognition
and acquiescence, it is perhaps, perfectly safe and just to
do so, upon the basis of a presumption that all the factors
necessary to establish the line existed, but we are not pre-
pared at this time to say that ten years, the prescriptive pe-
riod in this state, would suffice for that purpose.   However
that may be, it is well settled that an agreement to fix an
uncertain or disputed boundary need not be express, but
may be implied, and may be shown by the conduct of the
parties.   Miller v. Mills County, supra; Hubbard v. Stearns,

supra; Sneed v. Osborn, 25 Cal. 619; Morley v. Murphy, 179 Iowa 853, 162 N. W. 63; O'Donnell v. Penney, 17 R. I. 164, 20 A. 305, and cases cited; Ernsting v. Gleason, 137 Mo. 594, 597, 39 S. W. 70. Long practical acquiescence is regarded as the equivalent of an agreement. Diehl v. Zanger et al, 39 Mich. 601, 606. In fact it was denied in Baldwin v. Brown, 16 N. Y. 359 that a parol agreement, either actual or supposed, is at the foundation of the rule of acquiescence. The court probably referred to an express, parol agreement, and so understood, the decision is in harmony with many others. We think that there exists a practical distinction between an express agreement and one that is implied. An express agreement or an agreement equivalent thereto, when followed up by occupation as aforesaid, goes into effect and is binding when the possession continues for such time as will show the intent. 9 C. J. 231; Note 110 A. S. R. 686. We do not think that this should be true in case of an agreement that is implied, that is to say in case of recognition and acquiescence without express agreement or the equivalent thereof, although the contrary seems to be held in some cases. 9 C. J. 231; Tiffany, supra, sec. 295. A line acquiesced in for only a short period of time would not, generally at least, evince a clear intention to recognize it as permanent and we think it sounder public policy to require, in order to make such acquiescence binding upon the parties, a continuance thereof for a period at least equal to that of the statute of limitation in case of adverse possession, and that seems to be the weight of authority. Miller v. Mills County, supra, and cases cited; Note 110 A. S. R. 687. The acquiescence must, of course, be by both parties, in order to make it binding. This involves notice or knowledge of the claim of the other party. It involves the idea that the other party knows of the line established, knows of the possession taken and claim made by the other party and that assent was given thereto. Morley v. Murphy, supra. Thus the existence of a division fence does not alone show the requisite facts. It may be kept up only for

the convenience of the parties. 9 C. J. 246. But, we think we may safely say that when there is recognition and acquiescence of the parties in a boundary line, uncertain or in dispute in the first instance, for a period equal at least to the prescriptive period, under facts and circumstances which should be considered equivalent to an express agreement, and the land on each side of the line is occupied by the respective parties as their land, no good reason exists why the parties should not be bound to the same extent as though such express agreement had been made and carried out, particularly when facts exist which would make any other holding inequitable. Tiffany, supra, Sec. 295, says:

"It has been frequently decided that though there is no express agreement as to the location of the boundary line, adjoining proprietors cannot question a line which they have, for a considerable number of years, recognized as the correct line between their properties. Some of the cases base this doctrine upon the theory that such recognition of or "acquiescence" in a certain line is conclusive of the existence of an agreement, while others seem rather to regard it as an independent rule of law, dictated by general considerations of justice and expediency, in order that uncertainty and disturbance of boundaries be avoided."

In a note to 110 A. S. R. 684, the author says:

"In fact, there can be no doubt as a general rule, that where the owners of adjoining lands occupy their respective premises up to a certain line which they recognize and acquiesce in as their boundary line for a long period of time, they and their grantees will not be permitted to deny that the boundary thus recognized is not the true line of division between their properties, especially when such possession has been accompanied by valuable improvements. * * * If a fence has been built or a hedge has been set out as a boundary, and thereafter has been

recognized as the true boundary by adjoining owners for many years; or ·if a fence already erected is maintained and treated and occupied up to as their line of division for a long period of time, they cannot, as a rule, question the correctness of its location.   *   *   *   The long practical acquiescence of the parties concerned in a supposed boundary line is spoken of by some courts as constituting such an agreement upon it as to be conclusive, even if it has been erroneously located.   *   *   *   Other courts say that an agreement may be inferred or presumed from such acquiescence.   *   *   *   Other courts declare that such acquiescence is evidence of an agreement.   *   *   *   It would seem more logical to say that acquiescence on the part of the persons interested in the boundary line is evidence, or perhaps raises a presumption, that such boundary line is the true one.   *   *   *   And where the acquiescence is for a long period of time, it becomes conclusive evidence of the correctness of the boundary.''

In O'Donnell v. Penney, 17 R. I. 164, 167, 20 A. 305, 306, the court said:

''And even when no express agreement is shown, the authorities are numerous that acquiescence in a boundary line, assumed or established for a period equal to that prescribed in the statute of limitations to bar an entry, is conclusive evidence of such an agreement, and will preclude the parties from setting up the claim that the line so acquiesced in is not the true boundary.   *   *   *   This rule appears to have been adopted as a rule of repose, for the purpose of quieting titles, and preventing the uncertainty and confusion, and consequent litigation, which would be likely to result from the disturbance of boundary lines so long established.''

In Baldwin v. Brown, 16 N. Y. 359, 363, it was said:

"The acquiescence in such cases affords ground not merely for an inference of fact, to go to the jury as evidence of an original parol agreement, but for a direct legal inference as to the true boundary line. It is held to be proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary."

In Miller v. Mills County, 111 Iowa 654, 658, 82 N. W. 1038, 1040, the court said:

"Under either of these rules, however, the first inquiry always is, where is the true boundary between the tracts of. land? And it may be remarked that there is nothing about the government surveys entitling them to reverence. The original purpose was to enable the government to dispose of the public domain in parcels accurately defined. That they abound in mistakes is notorious, and is evidenced in the reported decisions of nearly every state save the original thirteen. Nor are the ordinary surveyors quite infallible. Their successive surveys nearly always disagree. This, aside from frequent carelessness or incompetency, is inevitable, from the variations of the needle, and slight differences in measurements over uneven ground. Reference is had to the government survey as pointing out the lines by which the lands described in the patents passed from the government, and by which they are ordinarily transferred by deeds. But if the coterminous owners have adopted another line as their division line, and have occupied up to it and recognized it as such for a period of ten years, there appears to be no reason for not regarding it as the true boundary line, notwithstanding it is not that fixed by the government survey. Tracy v. Newton, 57 Iowa, 210; Hiatt v. Kilpatrick, 48 Iowa, 78; Foulke v. Stockdale, 40 Iowa, 99. There was no express agreement between the parties to this case, or their grantors, that the fence be regarded as marking the boundary between their respective tracts of land, but the cir-

cumstances are such that an agreement ought to be implied. For more than eighteen years they have occupied up to and acquiesced in the division fence, and maintained it as the true boundary between them. They adopted it by their unmistakable acts, which in any other transaction would have all the force of implied contracts. Davis v. Curtis, 68 Iowa, 63. The authorities quite generally hold that, in the absence of controlling circumstances, acquiescence in a division line, assumed or established, accompanied by actual occupancy in accordance therewith by the adjoining owners for a period equal to that prescribed in the statute of limitations within which an entry may be barred, is conclusive evidence of such an agreement.''

In Clayton v. Feig, 179 Ill. 534, 541, 54 N. E. 149, 152 the court said:

''The law applicable to this branch of the case, deducible from the decisions of this court, may be stated thus: Where there is a dispute between adjoining owners of land as to the true boundary line, or that line is unascertained, they may establish it, first, by parol agreement and possession in pursuance thereof, and the line so agreed upon will be binding upon them and their privies in estate; second, such an agreement may be implied from the unequivocal acts and declarations of the parties and acquiescence for a considerable length of time; third, such an agreement, either express or implied, is enforceable both at law and in equity, * * * fourth, the line may be established by way of estoppel, without any agreement, when the parties have had undisturbed possession in conformity thereto for more than twenty years.''

To the same effect are:—Holmes v. Judge, 31 Utah 269, 87 Pac. 1009 (reviewing cases); Bradley v. Burkhart, 139 Iowa 323, 115 N. W. 597; Ogelvie v. Stockland, 92 Ore. 352, 179 Pac. 669; Borgeson v. Tubb, 54 Mont. 557, 172 Pac. 326; Sheets v. Sweeney, 136 Ill. 336, 342, 26 N. E.

648; Turner v. Creech, 58 Wash. 439, 108 Pac. 1084; Hellman v. Roe, 275 Ill. 158, 113 N. E. 989; Marion v. Baisley, 195 Mich. 51, 161 N. W. 820. Many other cases might be cited.

It is said, it is true, in 9 C. J. 245, that when a line is recognized and acquiesced in through a mutual mistake the parties will not be estopped to assert the true division line. The case of Yetzer v. Thoman, 17 O. S. 130, 91 A. D. 122, holds the exact opposite of the text in case the acquiescence has lasted for the prescriptive period. In Hinkley v. Crouse, 125 N. Y. 730, 26 N. E. 452, the acquiescence had existed for a time less than the prescriptive period. The case of Jordan v. Ferree, 101 Iowa 440, 70 N. W. 611, is distinguished in Miller v. Mills County, supra. Without reviewing each of the cases, we may simply state that they are not applicable or controlling here. That a line recognized and acquiesced in as the boundary line, under mistake, does not prevent the application of the doctrine of recognition and acquiescence in the proper case, is, in effect, the holding of all of the cases that recognize the doctrine. See particularly Miller v. Mills County, supra; Baldwin v. Brown, 16 N. Y. 359; Galbraith v. Lunsford, 87 Tenn. 89, 9 S. W. 365 1 L. R. A. 522; Holmes v. Judge, 31 Utah 269, 87 P. 1009; Griffin v. Brown, 167 Iowa 599, 149 N. W. 833; Note 110 A. S. R. 688. Cases no doubt arise when a party should not be held bound by a line acquiesced in by mutual mistake, but we think that we are safe in saying that where the mistake merely consists in the fact that the line finally proves not to be in accordance with the lines originally established by the Government or other proper authority, such mistake will not prevent the application of the doctrine mentioned, at least in a case where the line is known to be uncertain in the first place and is acquiesced in with that fact in view. The doctrine of recognition and acquiescence is invoked only where it appears that the boundary acquiesced in differs from the boundary established by the Government or other proper authority, and hence if a mis-

take of that kind would not bar a party from claiming the latter as the correct boundary even under such circumstances, the doctrine mentioned could never have any application at all. Nor is the statement in the former opinion of this court in this case, namely, that it does not appear that Brown claimed beyond the true, i. e. the government line, applicable under the doctrine before stated. It has been expressly held that a line may be established by recognition and acquiescence, although neither of the parties intends to claim more than his deed or patent gives him. Bradley v. Burkhart, 139 Iowa 323, 115 N. W. 597. That also appears more or less clearly in Miller v. Mills County, supra; Schwartzer v. Gebhart, supra; Hubbard v. Stearns, 86 Ill. 35. If there was no uncertainty as to the originally established line or it could have been easily ascertained and the parties believe the line established to be in accordance therewith and claim only to such an original line, then it may be, without deciding the point, that, generally speaking, the doctrine of recognition or acquiescence should not be held to apply, but the evidence in the case at bar shows that both of the parties were aware of the existing uncertainty in regard to the line in question.

We think that the rule mentioned is applicable in the case at bar. That the boundary line was uncertain is unquestioned; it is even uncertain now. With that in view the predecessor in interest of plaintiff erected a fence. This was about 1901. Greet, defendant's predecessor in interest established his homestead in accordance with that line and so did defendant, when he bought of Greet in 1904. Plaintiff purchased his land in 1904; he knew that Greet, and subsequently defendant, were in possession of the land east and north of the division fence, presumptively claiming ownership thereof. The parties in 1904 and 1905 jointly built an irrigating ditch, partially on defendant's land, which was used by defendant to irrigate the land east of the fence, and by plaintiff to irrigate land west of the fence. The fence was kept up jointly, each of the parties doing

more or less repair work on it from time to time. Plaintiff and defendant exchanged farm work at least as early as 1908, the former often helping the latter farm said land on the east side of the dividing line. In fact plaintiff helped defendant in breaking up some of his land and in putting it in cultivation. The witness Ilg testified that plaintiff showed him the boundary line on the northwest of the latter's land, a quarter of a mile west of the northern part of the fence mentioned. This was in effect the same thing, as though the fence in question had been pointed out as a boundary line, and was, if true, a distinct recognition that the fence was the true boundary line. From 1901 to 1919 the fence stood as a dividing line, and was never questioned as such, at least so far as came to defendant's knowledge, until shortly before this suit was brought in January 1919. In Stevenson v. Roebuck, 179 Iowa 461, 161 N. W. 462, a hedge which served as a boundary, was known not to be on the line, but the doctrine was held to apply. The facts in Morley v. Murphy, 179 Iowa 853, 162 N. W. 63, were no stronger than in the case at bar, but the case was decided in accordance with the rule. The language used in Tice v. Shangle, 182 Iowa 601, 164 N. W. 246, is very much applicable in the case at bar:

"Where adjoining lands have been divided by monuments marking a visible dividing line, and this line has been acquiesced in by the respective owners, possessing and cultivating up to such line for the statutory period, they will not be heard to say afterwards that the line is not the one to be recognized as the dividing line between the land. This may be shown by express agreement, or by the conduct of the parties, which clearly indicates an intent to recognize and hold the line so created as the true dividing line. * * * Lines adopted by parties and acquiesced in for so many years as this record shows these parties acquiesced in this line ought not to be lightly disturbed, and the secret purposes of the parties cannot be considered against their overt

acts of recognition and acquiescence. No party seems to have known at any time, and no party seems to have cared to ascertain for himself at any time, where the true government line should be. They built their fences, they made their lines, they cultivated their lands up to these fences, and, under the rule of acquiescence hereinbefore stated, they ought to be held to these lines so established and acquiesced in and should be held as a matter of law and fact to it as the true dividing line between their lands, beyond which neither ought to be permitted to trespass.''

What makes the doctrine aforesaid peculiarly applicable in the case at bar is a fact which we have not heretofore stressed, namely, that the lands of plaintiff as well as of defendant were taken up, cultivated and improved as homesteads under the laws of the United States. Certain equities arose by reason of that fact. These equities are discussed in Mason v. Braught, 33 S. Dak. 559, 146 N. W. 687, and Snider v. Ostrander, 26 Colo. App. 468, 145 Pac. 283; and these cases are, we think, decisive of the case at bar, rendering it necessary, in view of the undisputed facts herein, not only to reverse the case; but remand it with direction to enter judgment for defendant. Under section 2290, Revised Statutes of the United States, a homestead may be taken up only for the purpose of actual settlement and cultivation. When McNay took up his homestead, he knew that to be the law. He knew that unless he resided upon the land, he could not acquire title thereto under the homestead laws of the United States. Knowing the uncertainty of boundaries in the whole neighborhood, he deliberately placed a fence, to mark, at least substantially, the east and north boundaries of his land. Since he knew it was necessary for him to settle upon the land claimed by him as a homestead, it is inconceivable that he should have erected his fence as a fence of convenience only, intending to exclude from his homestead upon which he intended to reside, the forty-six acres of land now claimed by plaintiff. Surely

he never resided or made settlement on this forty-six acres of land, and there can be no doubt that he intended the fence to be at least the approximate boundary of his land. Defendant in this case took up his homestead, in good faith believing that the fence was his boundary on the west and south. We cannot doubt that he never would have taken up his homestead with this forty-six acres excluded, leaving him only a small acreage of any value, without being able to extend it, because the land to the east is hilly, barren and valueless. He resided upon and cultivated the strip in controversy. No one but he ever complied with the homestead laws of the United States, as to that strip. It was said in Wirth v. Branson, 98 U. S. 118, 25 L. Ed. 86, as follows:

"The rule is well settled by a long course of decisions that when public lands have been surveyed and placed in the market, or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract, is to be regarded as the equitable owner thereof."

To the same effect see Hedrick v. R. Co., 167 U. S. 673, 17 Sup. Ct. 922, 42 L. Ed. 320; Widdicombe v. Childers, 124 U. S. 400, 8 Sup. Ct. 517, 31 L. Ed. 427; Hedwick v. Beeler, 110 Mo. 91, 19 S. W. 492, and cases there cited. It is true that in these cases the claims of the party who attempted to take the property away from the person who had located and settled on the land were later in date. Nevertheless the principle of equity stated therein would seem to be also applicable to a case like that at bar.

In the case of Mason v. Braugh, supra, the land in dispute was the SE¼ of a Section 4, settled upon and improved by plaintiff's grantor. Defendant's grantor settled upon and improved the SW¼ of the same section. Defendant subsequently claimed the SW¼ aforesaid to be one-half mile further east; he claimed, in other words, that what had been supposed to be the east line of the SE¼ was ac-

tually the east line of the SW¼. The court in disposing of the contention of the defendant states as follows:

"It is undisputed that for more than twenty years prior to the commencement of this action, plaintiff and his grantors had been in the undisputed possession of the tract of land in question, claiming the same, first, as entrymen under the Timber Culture Act of the United States and afterwards, under patent issued by the government. During all of such time they had been making improvements thereon, believing in good faith that they were the owners of the premises so occupied. At this late date, and under the circumstances disclosed in this case, the defendant should not be heard to claim that he or his grantor ever acquired any title to or interest in the tract of land in controversy, and this too, regardless of whether or not, through some mistake of the government officials or government surveyor, there was issued to his grantor a patent to this tract of land, when his grantor had no right to the same."

The facts in the case of Snider v: Ostrander, supra, were similar to those in Mason v. Braught, supra. The patent issued to plaintiff's predecessor in interest in that case covered lands situated about one mile east of the lands located, settled upon and improved by him; and a patent for the lands so located and settled upon was issued to defendant's predecessor in interest, who had, however, actually located, settled upon and improved entirely different lands. The location and settlement had evidently in both cases been made under a mistake as to boundaries. The plaintiff brought an action to quiet the title to his lands. The court said:

"But there has always existed in courts of equity the jurisdiction to correct mistakes where lands have been given one claimant, but which unmistakably belong to another. * * * The defendant in error (plaintiff) according to his complaint, seeks only to obtain the legal title to lands

possessed and equitably owned by him and his predecessors in interest. The very suggestion of the conditions, as set forth in the complaint, if true, ought to satisfy any litigant that he or she could have no standing on the merits in a court of equity and a common duty should dictate to parties so situated that they lend all voluntary assistance on demand, to correct such errors as are here complained of, so as to permit each one to secure a patent to the premises upon which settlement, improvement and residence were established. To accomplish any other result would be a flagrant defeat of the cardinal purposes of the homestead and preemption laws of the United States, which are intended to provide 160 acres of government domain to such qualified citizens in the United States as in good faith settle upon, improve and occupy the same as permanent homes. The facts averred in the complaint are sufficient to entitle the defendant in error to a decree quieting his title to the premises in dispute and to justify the court in declaring that the plaintiffs in error hold the legal title thereof in trust for the defendant in error.''

The opinions in the two cases just cited are so convincing that little more need be said. We think that the plaintiff in this case should be held to have acquiesced in and be bound by the boundary line established by his predecessor in interest.

The judgment in this case must accordingly be reversed and remanded to the district court with direction to enter judgment in favor of the defendant and make any other, proper order herein not inconsistent herewith. It is accordingly so ordered.

POTTER, C. J., and KIMBALL, J., concur.